THE STATE OF KANSAS v. JAMES JEPSON et al.

No. 15,325.   (92 Pac. 600.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS — *Assistant Attorney-general — Authority.* The repeal (*The State v. Estep,* 66 Kan. 416) of section 4 of chapter 165 of the Laws of 1887 (Gen. Stat. 1901, § 2463) by section 1 of chapter 232 of the Laws 1901 (Gen. Stat. 1901, § 2493) does not limit the authority of an assistant attorney-general. That officer has authority to aid the attorney-general in the enforcement of all the provisions of the prohibitory law, regardless of when they were enacted.

2. ——— *Appointment of Assistant Attorney-general — Presumption—Authority.* When an assistant attorney-general has been appointed by the attorney-general the appointment will be presumed to have been regularly and legally made. If the authority of the officer so appointed is challenged under section 394 of the General Statutes of 1901 the certificate

of appointment will be *prima facie* sufficient to establish his right to represent the state.

3. ———— *Temporary Injunction—Notice.* When, in a suit for an injunction to suppress a public nuisance, the state applies to a court or a judge for a temporary injunction at the commencement of the suit no notice to the defendants is necessary, and none should be required.

4. ———— *Discretion of the Court—Application for a Temporary Injunction.* Whenever such an application is made the court or judge, in determining the sufficiency of the showing therefor, has the same judicial discretion that exists when other questions of fact are determined. In all such cases the general rule that the language of the statute will be liberally construed for the purpose of upholding and promoting its object, and that strained and technical interpretations of its provisions for the purpose of impairing or defeating its manifest purposes will be avoided, is applicable. And when under such rule of construction a fairly reasonable showing has been made the state is entitled to the writ.

5. ———— *Evidence Sufficient to Require a Temporary Injunction.* The evidence in this case examined and held to be sufficient.

Error from Crawford district court; ARTHUR FULLER, judge. Opinion filed November 9, 1907. Reversed.

*Fred S. Jackson,* attorney-general, and *George H. Stuessi,* assistant attorney-general for Crawford county, for The State; *J. K. Codding,* of counsel.

*O. T. Boaz,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: On January 9, 1906, the attorney-general duly appointed an assistant attorney-general for Crawford county, under the provisions of the law relating to intoxicating liquors, being part of section 2476 of the General Statutes of 1901, which reads:

"And whenever the county attorney shall be unable or shall neglect or refuse to enforce the provisions of this act in his county, or for any reason whatever the provisions of this act shall not be enforced in any

county, it shall be the duty of the attorney-general to enforce the same in such county, and for that purpose he may appoint as many assistants as he shall see fit, and he and his assistants shall be authorized to sign, verify and file all such complaints, informations, petitions and papers as the county attorney is authorized to sign, verify, or file, and to do and perform any act that the county attorney might lawfully do or perform."

On November 23, 1906, the assistant attorney-general commenced this suit against the defendants in error, charging them with keeping and maintaining a public nuisance. At the time of the commencement of this suit application was made by the assistant attorney-general to the judge of the district court of Crawford county for a temporary injunction. The application was denied, for the reason that notice thereof had not been given to the defendants. It was ordered that the hearing be set for November 27, 1906, and notice thereof be served upon the defendants. Notices were duly served, and the application at the appointed time was presented to the court, it then being in regular session. Each party appeared by attorney at the hearing. The state made the same showing as at the former presentation of the application. The defendants made no showing, but rested upon the case made by the state. The application was again denied. To this action of the judge and court the state duly excepted, and brings the questions here for review by petition in error. The case was orally argued in this court by the state, but was presented for the defendants by brief only.

It is contended by the defendants that an assistant attorney-general has no authority to commence a suit for an injunction to suppress a public nuisance or to make application for a temporary order of injunction to prevent the continuance of such a nuisance. This condition of the law results, it is claimed, from the repeal of section 4 of chapter 165 of the Laws of 1887,

being section 2463 of the General Statutes of 1901, by the passage of section 1 of chapter 232 of the Laws of 1901 (Gen. Stat. 1901, § 2493). (*The State v. Estep,* 66 Kan. 416, 71 Pac. 857.)

It is argued that the language used in the section providing for the appointment of an assistant attorney-general, hereinbefore copied, limits his duty to assisting the attorney-general in the enforcement of the provisions of that act. The words "this act," it is urged, refer to the then existing provisions of the prohibitory law, and cannot be applied to subsequent enactments, and, therefore, when section 4 of chapter 165 of the Laws of 1887 was repealed such repeal, to that extent, reduced the duty and authority of the assistant attorney-general. This argument is not new in this court. It was summarily disposed of in the case of *The State v. Storm,* 74 Kan. 859, 86 Pac. 145, and no other authority need be referred to here. In that case it was said:

"The fact that section 2470 of the 1901 compilation refers to prosecutions 'under this act,' while the act of 1901 relates to nuisances maintained 'in violation of law,' does not affect the case. This phraseology was of slight importance in the case of *The State v. Estep,* 66 Kan. 416, 71 Pac. 857, as indicating the purpose of the legislature to substitute a new nuisance law for the old, but the act of 1901 was designed to take its place as a part of the entire scheme of liquor legislation of the state, and all laws upon the subject are to be construed together and harmonized as far as possible. When section 2470 of the 1901 compilation was adopted it was a part of the only liquor act on the statute-book. Now that there is another the general purpose of both controls the interpretation of special provisions of each." (Page 860.)

See, also, section 7342 of the General Statutes of 1901, a part of which reads: "The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment."

The prohibitory law as it now stands is the result of more than twenty-five years' growth. Amendments and changes have been made in its provisions as seemed necessary to overcome the difficulties met with in its enforcement and to make it more efficient and effective. These various provisions, taken together, constitute the present prohibitory law of this state, and are to be considered and construed as if the entire enactment had occurred at the same time. It follows that the assistant attorney-general now has the same power and authority in the enforcement of any and all of these provisions that he possessed immediately after the office was created to enforce the provisions then existing.

It is also contended that an assistant attorney-general, before he has the right to present an application to the district court for a temporary injunction in behalf of the state, must affirmatively show that prior to his appointment the attorney-general, upon notice to the county attorney, made due inquiry and determined thereon that the conditions prescribed by the statute for the appointment of an assistant attorney-general existed, and as it does not appear from the record that such showing was made in this case it must be assumed that the court refused to grant the writ for this reason. The appointment by the attorney-general of the person who appeared in this case for the state as assistant attorney-general is conceded, and no controversy on the part of the county attorney is claimed to exist. This question is one in which these defendants have no interest. If the appointment for any reason is contrary to law the state or the county attorney might in a proper proceeding have the matter litigated, but it has no place here. The attorney-general had full authority to make the appointment, and, having done so, it will be presumed to have been made regularly and according to law. If the authority of an assistant attorney-general, so appointed, is chal-

lenged under section 394 of the General Statutes of
1901, the certificate of appointment will be sufficient
to establish *prima facie* his right to represent the state.

The application for a temporary injunction was
denied by the judge for the reason that no notice had
been given thereof to the defendants. The state insists
that the law does not contemplate the giving of any
notice. We are inclined to this view. Delay has al-
ways been one of the formidable obstacles interposed
against the effective enforcement of this law, and the
provision requiring a temporary injunction to be is-
sued at the commencement. of the action was enacted
advisedly and with the intent that it should be
promptly enforced. By this means a harmless but
effective restraint is placed upon offenders at the earli-
est possible moment. The innocent are not affected by
such a writ. If the order is violated, the delinquents
will be dealt with by the court issuing the writ, which
has full power to protect them from undeserved conse-
quences. We are unable to see how any right will be
invaded, any wrong done or any principle of justice
violated by allowing such a writ without notice. A
more harmless proceeding could hardly be devised.
Unless the party enjoined is engaged in crime as a
business, he is not affected thereby. If he is so en-
gaged there is no occasion for the conscience of the
chancellor to be aroused in his behalf. It is evident
that the legislature regarded this writ as harmless, or
a bond would not have been expressly dispensed with.
We conclude that notice is unnecessary, and should
not be required.

Why the district court, on November 27, after due
notice had been given to the defendants, refused to
allow the temporary injunction does not appear from
the record. It merely shows that the state presented
the same evidence as at the hearing before the judge,
and the defendants offered nothing, but rested upon
the case made by the state. We are compelled, there-

fore, to assume that the writ was denied for the reason that the showing made by the state was insufficient. The application was supported by four affidavits. Elmer E. Long stated in an affidavit that at the place in question, describing it, the defendants were keeping and maintaining "a place where intoxicating liquors as a beverage were and are sold, bartered and given away in violation of law, and where persons were and are permitted to resort for the purpose of drinking intoxicating liquors as a beverage; and where intoxicating liquors were and are kept for sale, barter and delivery in violation of law, and where intoxicating liquors, bottles, glasses, kegs and other property were and are kept and used in maintaining said place, which said place and said intoxicating liquors, bottles, glasses, kegs, bars and other property kept and used in maintaining said place were and are a common nuisance." The affidavit of T. B. Stearns reads:

"T. B. Stearns, being first duly sworn, on oath deposes and says: That he lives at 903 East Washington street, in Pittsburg, Kan.; that on the 23d of November, 1906, about noon, he went into a saloon known as the 'Monarch,' and run by Lontkowsky and Roloff, a one-story brick building on East Seventh street, in Pittsburg, Kan.; that this place has every appearance of being an ordinary saloon, and that affiant saw a bar, back-bar, mirror, bottles and glasses, an ice-chest, pump or faucet attached near the ice-chest, and numerous bottles containing liquor labeled 'whisky' sitting on the back-bar; that he seated himself at the stove for a few moments and engaged in conversation with a one-legged man, who told affiant that Louie Lontkowsky was the proprietor of the place, and that it was Louie and his son who were tending bar at the time; that affiant walked up to the bar and called for a 'small glass of beer' and a 'small bottle of whisky' and that the boy bartender drew a glass of beer at the pump and delivered it to affiant, and that affiant drank it; affiant says that he has drunk beer before and knows beer when he tastes it; that it was 'beer' which he called for, and he is positive that this was beer; that the older Lontkowsky showed affiant three

bottles of whisky, which he got from the back-bar, of various sizes and prices, and affiant said he would take the half-pint bottle, which the bartender priced to him at 40 cents and delivered it to affiant; that affiant paid said bartender 45 cents in payment for the said whisky and beer; that there was a drunken man also sitting at the fire.

"And affiant further says that there was a man, employed [by] the Collum Commerce Company, standing at the bar drinking beer and talking to two or three other men drinking beer, and that affiant believes this person's name to be John Tolliver; that he saw the bartender deliver a glass of beer to one of these men, and that affiant is positive that Tolliver and these men were all drinking beer and that it was purchased or bartered in said saloon.

"And affiant says that two other men, unknown to affiant, came in, who looked like working men, and stepped to the bar and called for 'beer'; that one of the bartenders drew and delivered two glasses of beer to these men and that affiant saw them place some money on the counter in payment therefor. And affiant says that he is positive this was beer, as it looked and foamed like beer, and that it was 'beer' which was called for.

"And affiant further says that before leaving said saloon he called for a 'half-pint of gin'; that the boy bartender took a large bottle of gin from back of the bar, filled a half-pint bottle therefrom and delivered this half-pint bottle of gin to affiant, who paid said bartender 25 cents for the same; that affiant carried this gin away with him, and has tasted it, and he is positive that it is gin and that it is intoxicating.

"And affiant further says that this place is a place where beer, whisky and other intoxicating liquors are being sold, bartered and given away in violation of law, and where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage; and that said place is a nuisance to the people of the state of Kansas, and more particularly to the people of the vicinity where said place is located."

The affidavit of C. W. Jackson reads:

"On January 20, 1906, I called at a place known as the 'Monarch,' on East Seventh street, in Pittsburg, Kan. It was at night. This is a one-story brick build-

ing, just east across the alley from the other saloon. There was a bar, ice-chest, mirror, bottles and glasses and pump. Men were standing about bar drinking, but I knew only one of them. This was Jim Wadkins. Some of the strangers called for beer, and Ben Roloff, the bartender, drew it at pump. Jim Wadkins also called for beer, and Roloff drew it at pump and brought it to him. I saw him pay 5 cents for this. I also called for beer for two, as I had to treat Jim Wadkins. The bartender drew it at pump, brought it to us, and I paid 10 cents for the two glasses. I have drunk beer before, and know this was beer I drank at this place. I also called for a bottle of whisky, and bartender got it off the back-bar and delivered it to me. It was a half-pint bottle and I paid 25 cents for it, labeled it after taking it away from there. This place was on the ground floor."

The last-named affidavit was taken before the assistant attorney-general, upon an examination held under section 2472 of the General Statutes of 1901, and, while not an affidavit in a strict sense, should be regarded at least as a statement under oath equally trustworthy with an ordinary affidavit. It is argued that in determining the sufficiency of an application of this nature the court sits as a chancellor and exercises that judicial discretion which under ancient usage is applicable to courts of equity, and that the allowance or denial of this extraordinary writ will not ordinarily be disturbed by a reviewing court. The proposition as stated in the brief of counsel reads:

"We learn from the books that these extraordinary remedies of a court of equity were invoked when a case was presented which appealed to the conscience of the chancellor. They had their origin not in statutory law but in the creation of a system which was to correct evils which could not be corrected at law by reason of its universality. When the legislature commands a court to issue an order of injunction, and by this act removes this particular cause of injunction, and by this act removes this particular cause from whence it should never be removed, and places it in the catalogue of statutory remedies, the language by which it is commanded must be clear and concise and

capable of no other meaning. In short, the legislature stands over the judge with a club and says, 'No matter what your conscience may dictate in the premises, you must issue this order.' Now while the legislature may do this, yet it is difficult to believe that they would do it, and in the case at bar, and in the construction of this statute, there is no doubt in my mind that they never intended any such thing."

The statute upon this subject reads:

"The attorney-general, county attorney, or any citizen of the county where such a nuisance as is defined in section 1, chapter 232, Session Laws of 1901, exists, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action, and no bond shall be required." (Laws 1903, ch. 338, § 1.)

But this is not an ancient suit in equity. It is a proceeding created by statute for the purpose of obtaining prompt and effective results, and must be construed and administered in furtherance of this purpose. The discretion which a court has under this law is the same that it possesses in other cases where questions of fact are determined. Whenever a fairly reasonable showing is made for a temporary injunction at the commencement of the suit it is the imperative duty of the court or judge promptly to allow the writ. And it is supposed that in the consideration of this question the language of the law will be liberally construed, with the view of upholding and promoting its objects, and that all strained and technical interpretations which tend to subvert its purpose and defeat its effective enforcement will be avoided.

The showing made by the state in this case, both before the judge and the court, was ample. If the petition, which is verified upon information and belief, be disregarded as hearsay, and the affidavit of Long be passed because consisting of conclusions, neither of which can be insisted upon by the defendants because no objections were made to them, the other

affidavits, by facts given in detail, show clearly that the defendants Lontkowsky and Roloff were, and had been for months, running an open saloon. These facts were undisputed—practically confessed by the silence of the accused parties, who were present at the hearing. To disregard the facts here shown amounts to an abuse of discretion, which makes the ruling erroneous.

The judgment of the district court is reversed, with direction to grant a temporary injunction and proceed with the case in accordance with the views herein expressed.