No. 22,076.

THE STATE OF KANSAS, *Appellee,* v. WILLIAM BERRY, *Appellant.*

SYLLABUS BY THE COURT.

INTOXICATING LIQUORS—*Having Liquor in One's Possession—Persistent-Violator Act.* A violation of the bone-dry act (Laws 1917, ch. 215), by. unlawfully having in one's possession intoxicating liquor, is a violation of "the provisions of the prohibitory liquor law," within the terms of the persistent-violator act. (Laws 1911, ch. 165, as amended by Laws 1915, ch. 232.)

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed December 7, 1918. Affirmed.

*Fred J. Evans,* of Garden City, for the appellant.

*S. M. Brewster,* attorney-general, *A. Schulman,* county attorney, and *B. F. Stocks,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a conviction under the persistent-violator act by reason of a violation of the bone-dry statute.

Counsel agree that this is the sole question presented: "Is a violation of section 1 of chapter 215 of the Laws of 1917, by merely having intoxicating liquor in one's possession, a second offense under section 5541 of the General Statutes of 1915, making the defendant a persistent violator?" This depends upon the intention of the legislature ascertainable by the language used in the various acts touching the subject of intoxicating liquor.

The prohibition amendment was submitted in 1879 and adopted at the general election of 1880. The legislature of 1881 enacted chapter 128 entitled, "An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes." Twenty-two sections prescribed ways in which liquor might be sold lawfully, including the scheme of obtaining a druggist's

permit from the probate judge, the matter of physician's prescriptions, the written application for a prescription, the giving of bond for those who sought to manufacture liquor, the application to purchase from such person and the restrictions concerning sales by him; certain property was made liable for fines and costs, and it was made unlawful to get intoxicated or be found in a state of intoxication. Section 23 of the act repealed chapter 35 of the General Statutes of 1868, which was a comprehensive act "to restrain dramshops and taverns, to regulate the sale of intoxicating liquors." In 1885, chapter 149, amendatory of and supplemental to the statute of 1881, was enacted, making more drastic several sections of the former act and making the county attorney a sort of examining magistrate to subpœna witnesses and hold inquisitions precedent and preparatory to beginning prosecutions. Each of these acts made the place where liquors are sold unlawfully a common nuisance. The latter act added a section making it an offense to take orders for intoxicating liquors in this state, unless taken from one authorized to sell. A section was added making it a crime to sell to any person whose relatives had notified the seller of his use of intoxicating liquors. It was also made unlawful for common carriers to knowingly carry or deliver intoxicating liquors to be sold in violation of the act, and any citizen was authorized to employ an attorney to assist the county attorney, and the person so employed was entitled to recognition by the county attorney as associate counsel.

In 1887, chapter 164 was enacted, prohibiting the use of intoxicating liquors at any voting place, and also chapter 165, which was amendatory of the act of 1885, and made a number of the former provisions more specific and drastic.

In 1891 an act was passed (ch. 131) prohibiting the sale of intoxicating liquors to inmates of national or state soldiers' homes. In 1901, chapter 232 was enacted, relating to the sale of intoxicating liquors and the supervision of the places where sold, and providing for the forfeiture of goods seized and for the punishment of landlords knowingly leasing building for use as a common nuisance; also chapter 233, amending one section of the act of 1897 concerning the inquisitions held by county attorneys.

In 1903, chapter 338 was passed, providing for the bringing of an injunction suit by the prosecuting officer or a private citizen in case of the maintenance of a nuisance, and the title made the act supplemental to chapter 232 of the Laws of 1901. Also in 1903, chapter 339, amending one section of the act of 1887 touching sales by those having permits, was passed.

The legislature of 1911 enacted chapter 178, amending one section of the amendatory act of 1909 (ch. 164), and permitting certain wholesale druggists to sell alcohol for the excepted purposes, also chapter 165, the persistent-violator act, providing that any person having once been duly convicted "of the violations of the prohibitory liquor law and who shall thereafter directly or indirectly violate the provisions of the prohibitory liquor law shall be considered a persistent violator of the prohibitory liquor law," etc. This language seems to have been used premeditatedly, for in 1906 this court had decided, in *The State v. Storm*, 74 Kan. 859, 86 Pac. 145, that— ·

"The act of 1901 was designed to take its place as a part of the entire scheme of liquor legislation of the state, and all laws upon the subject are to be construed together and harmonized as far as possible." (p. 860.)

In 1907, in *The State v. Jepson*, 76 Kan. 644, 92 Pac. 600, it was decided that an assistant attorney-general had authority to aid the attorney-general in the enforcement of all the provisions of the prohibitory law, regardless of when they were enacted. It was there said:

"The prohibitory law as it now stands is the result of more than twenty-five years' growth. Amendments and changes have been made in its provisions as seemed necessary to overcome the difficulties met with in its enforcement and to make it more efficient and effective. These various provisions taken together, constitute the present prohibitory law of this state, and are to be considered and construed as if the entire enactment had occurred at the same time." (p. 648.)

Section 3 of the persistent-violator act provides that—

"This act shall be construed only as supplemental to existing legislation."

The legislature of 1915, by chapter 232, amended and repealed section 1 of the persistent-violator act, leaving the remainder of the statute unchanged. Then came the bone-dry act of 1917, chapter 215, prohibiting the use or possession or shipment of intoxicating liquor, except under certain specified circumstances, section 8 being as follows:

"This act shall be considered as supplemental to laws now in force relating to intoxicating liquors."

In *The State v. Shiffler,* 93 Kan. 618, 144 Pac. 845, it was said of this enactment that it does not make each violation subsequent to a conviction a separate felony, but merely creates the status of "persistent violator" and affixes a single penalty for occupying that status; that the individual who backslides after receiving the correction of a conviction is treated as a kind of common nuisance. In *The State v. Briggs,* 94 Kan. 92, 145 Pac. 866, holding that the sale of liquor or the maintenance of a nuisance by one who had previously violated the prohibitory law constituted such person a persistent violator, it was said:

"As quite plainly indicated by the language of this section, when one is found guilty of a violation of the prohibitory law and at the same time is found to have been previously convicted of a violation thereof the effect is to place the defendant in the status of a persistent violator, or in other words to classify him as one who has been judicially determined to possess a disposition to violate the prohibitory law persistently, for which persistent violation he is to be punished." (p. 94.)

The language of section 3 of the act of 1911, expressly making that act supplemental to existing legislation, and that of section 8 of the act of 1917, commanding that it shall be construed as supplemental to the laws then in force relating to intoxicating liquors, together with the construction based upon similar legislation by the decisions referred to, render it conclusive that a violation of the bone-dry act is a violation of the "provisions of the prohibitory liquor law" within the meaning of the act of 1911 as amended by the act of 1915.

The judgment is affirmed.

DAWSON, J. (dissenting) : Let us clearly understand what this case is about, for the result is decidedly startling. The unfortunate sinner who presents this appeal was convicted of a *felony* for having in his possession a bottle of whisky for personal use, and he must now do penal servitude in the state penitentiary therefor.

The pertinent provisions of the statute which he violated read:

"SECTION 1. It shall be unlawful for any person to keep or have in his possession, for personal use or otherwise, any intoxicating liquors. . . .

Any person violating the provisions of this section shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined not less than $100, nor more than $500, and imprisoned in the county jail not less than thirty days nor more than six months."

"SEC. 8. This act shall be considered as supplemental to laws now in force relating to intoxicating liquors." (Laws 1917, ch. 215.)

Now, although this statute fixes a fine and jail sentence for the offense of keeping intoxicating liquor in one's possession for personal use, such an artificial and undue significance is attached to the language of section 8, quoted above, that in this case we have made the deduction that a felony has been committed—a result which the legislature surely never intended. I think section 8 is largely a precautionary clause, admonishing law officers and courts not to permit this act of 1917 to supersede or otherwise impair existing legislation, but to construe it in harmony therewith. The act of 1917 merely adds a new offense—the possession of intoxicants, and the act prescribes its own penalties. If, however, by strained construction, the penalties of the persistent-violator act should be extended to this act or substituted for those imposed by this act, those penalties should not be imposed the first time this new offense is committed, but should await a second or later offense of the same sort. I do not say that interpretation would be correct, but I might be willing to countenance it. To the present decision I feel compelled to dissent.

PORTER, J., concurs in the dissent.