## No. 34,300

The State of Kansas, ex rel. Eli Eubanks, County Attorney, *Appellee*, v. (Clem Dick et al., Defendants) Connie Busch, *Appellant*.

(92 P. 2d 92)

Opinion filed July 8, 1939.

*W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems* and *Robert G. Braden,* all of Wichita, for the appellant.

*Jay S. Parker,* attorney general, *Tom Harley,* county attorney, *Harold A. Zelinkoff,* deputy county attorney, *Eli Eubanks* and *Ralph E. Gilchrist,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Thiele, J.: Connie Busch appeals from a judgment abating and permanently enjoining certain described real estate as a place where a nuisance was maintained in violation of the intoxicating liquor laws of the state, and from a judgment for costs in connection therewith.

The real estate is described as that portion of a described tract "occupied by and commonly known as the Black Cat or Cats Sundries," in Sedgwick county. At the trial it was agreed the building was known as 3805 Broadway and that the legal title stood in the name of Connie Busch. A plat offered in evidence shows that the Black Cat building faced east. Immediately to the north was another building, part of which was connected to the first, but there seems to have been no doorway between them. This north building at some undisclosed time was used as a hamburger stand. To the rear were six or seven cabins and garages used in connection with a gas filling station a short distance to the south of the Black Cat. A fence separated the Black Cat building from all of the cabins except one.

Pursuant to a duly filed petition and application for injunction, a temporary injunction issued on February 11, 1938, the defendants being Albert Dick, Clem Dick, Frank Busch and Connie Busch. This followed a raid of the premises under search warrant at which time one bottle of intoxicating liquor was found in the Black Cat and ninety-nine bottles were found in the building immediately to the north. There was taken from the wall of the main building a United States Internal Revenue special tax stamp bearing the legend: "Keep this stamp posted," showing payment of $25 tax—retail liquor dealer—expiring June 30, 1937, and issued to Frank Ridder, 3809 N. Broadway, Wichita. At the same time, defendants Clem Dick and Albert Dick, proprietors or occupants, were arrested and charged with unlawful possession of intoxicating liquors. Sometime thereafter Albert Dick pleaded guilty and was sentenced to imprisonment and fine, the fine being paid. The criminal action against Clem Dick was dismissed. On October 30, 1938, a sheriff's force again searched the property under warrant. At this time, W. W. LeBlond was in charge of the Black Cat, and James Miller was in charge of the filling station. William Morris was also arrested, but there is no showing as to what connection, if any, he had either with the Black Cat or the filling station. A partially filled bottle of gin was found in a slop bucket outside the back door of the Black Cat, and between the bucket and the side of the building was a glass full of gin. At a point possibly two hundred fifty feet to the northwest and possibly fifty feet northwest of the west cabin and to the west of the fence referred to above, twenty pints of intoxicating liquor were found. The record does not disclose what the

place of storage was, or, if the liquor was concealed, the manner of its concealment. LeBlond, Miller and Morris were arrested. On November 1, 1938, on motion of the state, they were made parties defendant to the action for an injunction. On November 15, 1938, an order to show cause why each of the defendants should not be held in contempt and why a padlocking order should not issue was made and trial thereon followed on December 5, 1938, at which the defendants Dick did not appear and were not represented. At the conclusion of all the evidence, each of the other defendants demurred, and as to all of them, except Connie Busch, the demurrer was sustained.

The trial court found the temporary injunction should be made permanent and decreed that Clem Dick, Albert Dick and Connie Busch be enjoined from selling, delivering and giving away intoxicating liquors on the involved real estate, etc., and adjudged that the costs, including an attorney's fee of $100 to the county attorney be paid by said three defendants. No padlocking order was made. The motion of Connie Busch for a new trial was denied, and she appeals.

Under sufficient specifications of error, appellant presents three questions which will be considered.

The first is whether in a proceeding to abate a liquor nuisance the court may render a judgment for costs and attorney fees and enter a permanent injunction against an owner of the premises in the absence of a showing either that the owner of the premises had knowledge a nuisance was being maintained on the premises by a tenant, or that the owner was implicated with the tenant. The second question is whether the evidence presented tended to show knowledge on the part of the owner that any liquor nuisance was maintained by her tenant, and the third question pertains to whether an allowance of a $100 attorney fee was reasonable and proper.

It may be observed there is no evidence and no claim by the state that appellant was personally engaged in maintaining a liquor nuisance on her real estate. If she is to be held liable, it must have been established that she "assisted in maintaining" as that expression is used in the statutes pertaining to abatement of intoxicating liquor nuisances.

With respect to the first question, appellant presents a discussion of the legal test to be applied in determining who "assists" in maintaining the nuisance as a result of which an order of injunction, with resulting liability for costs, may issue. In that connection, our at-

tention is directed to *State v. Poggmeyer*, 91 Kan. 633, 138 Pac. 593, where it was said:

"The various provisions of the prohibitory law, containing amendments and changes made in the twenty-five years and more of its growth, should be construed together as if all its provisions were enacted at the same time. (*The State v. Jepson*, 76 Kan. 644, 648, 92 Pac. 600.)" (p. 635.)

That case was decided in 1914 and since then changes in the intoxicating liquor laws have been made, perhaps the outstanding one being the so-called "bone-dry law." Each decision herein mentioned must be considered in view of the statutes in force at the time of its rendition.

Without attempting to mention each statute, it may be noted that under the bone-dry law it is an offense for any person to have intoxicating liquors in his possession, and also an offense "to permit another to have or keep or use any such liquors on any premises used or controlled by him." (G. S. 1935, 21-2101.) It is also an offense for any person, directly or indirectly, to keep or maintain a place where intoxicating liquors are received or kept for use, gift, barter or sale (G. S. 1935, 21-2118). Each of these statutes defines a criminal offense, with resulting consequences following conviction.

The particular statute with which we are now concerned was originally enacted as Laws 1901, ch. 232, as supplemented by subsequent legislation, and now appears as G. S. 1935, 21-2130 to 21-2139, inclusive. Section 1 of the original act declares that—

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of the law, and all intoxicating liquors, bottles, glasses, kegs, pumps, bars and other property kept in and used in maintaining such a place, are hereby declared to be common nuisances; and every person who maintains or assists in maintaining such common nuisance shall be guilty of a misdemeanor" (and punished as provided in the act).

It will be observed that the physical objects are declared to be the nuisances and that the punishment is primarily for maintenance of the nuisance. Under section 3 provision is made for the filing of answers by any defendant or other persons claiming property seized, and under section 4 provision is made for judgment for forfeiture, and if the court shall find the property then owned by any person was knowingly allowed by him to be used in maintaining a nuisance, for judgment for costs against him.

Section 5 of the act provides a right of reëntry by the owner of premises where a tenant maintains or permits maintenance of a nuisance, and section 6 provides:

"Anyone who knowingly permits any building or tenement owned or leased by him or under his control, or any part thereof, to be used in maintaining a common nuisance, or, after being notified in writing of such use, omits to take all reasonable measures to eject therefrom the person so using the same, shall be deemed guilty of assisting in maintaining such nuisance."

What was original section 8 was revised, with other provisions of other acts, in 1923. It now appears as G. S. 1935, 21-2139, and reads:

"In all prosecutions, either under the state laws or under municipal ordinances, for maintaining a common nuisance as hereinbefore defined, the finding of intoxicating liquors in the possession of one not legally authorized to sell the same, shall be prima facie evidence that such liquors are kept for sale or use in violation of law."

To make the above act more effective and to supplement it, the legislature enacted Laws 1903, ch. 338, § 1 (G. S. 1935, 21-2131), providing for an action in the name of the state to abate and perpetually enjoin a nuisance as defined in the act heretofore mentioned. Among other provisions is one that on judgment for plaintiff an attorney's fee may be fixed and collected as other costs.

Before an action to abate a nuisance may be successfully maintained, it is necessary to show the place in question was one where intoxicating liquors were manufactured, sold, bartered or given away, or where persons were permitted to resort for the purpose of drinking them as a beverage, or where they were kept for sale, and a showing that intoxicating liquor was found on the premises would be prima facie evidence that they were kept for sale or use in violation of law.

In this case we are concerned with the test to be applied to the owner of the real estate, rather than to the actual and personal maintenance of the nuisance, and the question in this case is as to the meaning to be given to the word "assists" as used in defining places declared nuisances and to the words "knowingly permits" as used in referring to buildings or tenements used in maintaining the nuisance.

In *Koester v. The State, ex rel.,* 36 Kan. 27, 12 Pac. 339, Koester owned certain real estate which he rented to Taylor. Taylor sublet a portion to Temme, who opened a saloon. An action to abate was brought against Koester and Temme, and a temporary order made.

Later motion was filed to have Koester held in contempt because he had allowed another person to open a saloon. The trial court held Koester in contempt and he appealed. This court reversed, holding:

"Where a landlord leases his premises to a tenant for a term of years at a stated rent, and thereby loses all control over the premises while the tenant is in possession, and subsequently a temporary injunction is granted against him and a subtenant, forbidding them from opening or keeping a saloon upon the premises for the sale of intoxicating liquors in violation of law, and afterwards, and while the original lessee is in possession of the premises under the lease, a subtenant opens a saloon therein and sells intoxicating liquors without having any permit therefor, the mere knowledge of the landlord that his premises are used for the sale of intoxicating liquors in violation of law, and his failure or omission to take steps to avoid the lease, and to reënter the premises, are not sufficient to justify his punishment for contempt for disobedience of the temporary injunction."

It may be noted that the above decision has never been cited in a subsequent case. There has been great change in the statutes since it was rendered, and a similar ruling would hardly be made in a like case today.

It was provided in the original liquor act passed in 1881 (now G. S. 1935, 21-2120) that in case any person should let or lease any property "and shall knowingly suffer the same to be used and occupied for the sale of intoxicating liquors," etc., fine and costs should be a lien on the real estate. Under that statute it was held in *Cordes v. The State*, 37 Kan. 48, 14 Pac. 493, it was not essential the owner witnessed or had knowledge of particular sales of which the occupant was convicted, and—

"An owner of leased premises can only be made liable under this statutory provision when he knowingly permits the occupant to use the premises for the unlawful sale of intoxicating liquors; but knowledge sufficient to excite the suspicions of a prudent man, and to put him upon inquiry, is equivalent to knowledge of the ultimate facts." (Syl. ¶ 3.)

Although there have been many cases dealing with injunctions against nuisances in the intervening years, nearly all of them deal with the liability of the persons in charge as distinguished from the liability of the owner of the real estate. In *State v. Glass*, 99 Kan. 159, 160 Pac. 1145, it was said:

"The defendants insist that the testimony did not prove that a nuisance had been kept or maintained by them. It was not necessary to prove that they had kept or maintained the nuisance. It was sufficient if the evidence proved that the nuisance had been kept and maintained with the knowledge, permission or consent of the defendants." (p. 161.)

In the recent case of *State v. Bonnie France,* 146 Kan. 680, 72 P. 2d 1003, no test was set forth, the case holding only that the evidence was sufficient to charge the owner with actual knowledge a nuisance was being maintained.

It must be remembered that the primary purpose of the injunction proceeding, insofar as real estate is concerned, is to prohibit its use as a liquor nuisance, and the mere fact the owner did not know of the wrongful use would not defeat the action. To successfully maintain the action against the real estate it is not necessary to prove actual sales. (See *State v. Lewis,* 63 Kan. 265, 65 Pac. 258, for a more complete discussion.)

To show liability of the owner for the costs and charges ensuing from such a proceeding, it would be necessary to show that the owner assisted, assistance under the statute, in addition to active participation, including knowingly permitting the unlawful use. Knowledge of that unlawful use may be proved directly or inferentially. Under the statute, possession of intoxicating liquor on the premises is prima facie evidence. And proof of knowledge of any facts sufficient to excite the suspicions of any prudent person and to put him on inquiry is equivalent to knowledge of the ultimate fact.

And so we proceed to consideration of appellant's second question, and that is whether the evidence was sufficient to justify the judgment.

In addition to the showing indicated by what has been said heretofore, there was a showing that at the time of the first raid there was a regular bar, equipment, glasses, shakers, etc., in the Black Cat. Defendant's cross-examination tended to show it was a bar of the type found in places where beer or soda water was sold. There was also evidence that at the time of the second raid there were some electric bells for signaling purposes. Defendant's evidence was that these bells were used in connection with operation of the filling station and the cabin camp.

Appellant objected to the internal revenue stamp being received in evidence and now contends its admission was error and it should not be considered. In *State v. Dollar,* 88 Kan. 346, 128 Pac. 365, it was held it was competent to show in a liquor prosecution that the accused, during a portion of two years preceding the commencement of the action, had procured internal revenue stamps, and to introduce in evidence documents in connection therewith found on the premises. It must be remembered that when this evidence was

received, all of the defendants were before the court. We do not overlook the fact that, at the time it was found, the time for which the same was issued had expired, that the person to whom it was issued was not identified, and that the address noted was not that where the stamp was posted. Later, although it did not do so, the state might possibly have shown the stamp had been posted for some length of time and that each of the defendants was aware of it. We cannot say the admission in evidence of the stamp was error.

There is dispute whether appellant admitted she signed appearance bonds for some of the defendants. We shall not attempt to resolve that dispute, for the mere fact—if it was a fact—that she signed bonds for her tenants did little to prove knowledge on her part of liquor law violations on their part.

Actions to abate liquor nuisances and for injunctions are civil and not criminal (*State v. Curtis*, 143 Kan. 984, 986, 57 P. 2d 22) and the same high degree of proof is not necessary as in a criminal proceeding. But there must be proof of the various elements required by the statute. In the present case, there are two matters for consideration: (1) whether an injunction should have been granted as to the real estate, and (2) whether Connie Busch either maintained, assisted in maintaining or knowingly permitted its maintenance, so that she might be held liable for costs including attorney's fees allowed to the plaintiff. We shall consider the second question first.

The trial court, having heard all of the above evidence, sustained the demurrers of defendants LeBlond, Morris, Miller and Frank Busch. The defendants Dick made no appearance and did not defend and have not appealed. But what of Connie Busch? A majority of this court is of opinion the evidence did not justify the judgment against her. Not being satisfied that the abstract and counter abstract contained all of the evidence, we sent for the transcript. A painstaking review of it shows no more than is disclosed by the printed record in the abstracts. Insofar as Connie Busch is concerned, the record shows that she admitted owning the real estate, possibly that after they were arrested she signed the bond or bonds of some one or more of the other defendants, although that is far from clear. These matters cannot be said to be sufficient to excite her suspicions as a prudent person and to put her on inquiry as to whether or not her real estate was a nuisance under the intoxicating liquor laws so as to subject her to the penalties of those laws. The

record is destitute of any evidence as to whether or not there had been violations at any other times at that place; there was no evidence the place had a reputation as a place where liquors were kept, bartered or sold; there was no evidence that Connie Busch had been in the Black Cat at any time the revenue stamp was posted on the wall or that she knew of it. The most that can be said is that she knew what the first raid disclosed after the raid was made. Thereafter, her then tenants left the premises and she got other tenants. At the second raid, some liquor was found outside the rear door of the Black Cat, and other liquor was found on property other than that with which we are concerned. The trial court said that the evidence was not sufficient as against LeBlond, Miller and Morris to show a nuisance was being maintained. We are inclined to agree that it was not—but whether it was or was not, it was far short of being sufficient to show that Connie Busch either maintained, assisted in maintaining, or knowingly permitted the maintenance of a liquor nuisance on the real estate owned by her and described in the application for an injunction. Under such circumstances, the judgment of the trial court against Connie Busch for costs and attorney's fees was erroneous and must be set aside and vacated.

What of the injunction against the real estate? Under the statute, the presence of intoxicating liquor found in the Black Cat at the time of the first raid was prima facie evidence that it was there for sale or use in violation of law (G. S. 1935, 21-2139). There was no evidence to rebut that evidence. Later Albert Dick, then one of the proprietors, pleaded guilty to unlawful possession. Such being the circumstances, how can it be said there was no showing a nuisance was not being maintained on the premises? Under the reasoning of *State v. Lewis*, 63 Kan. 265, 65 Pac. 258, the proceeding was also in the nature of one in rem against the real estate, and the evidence was sufficient to support the judgment that a liquor nuisance was maintained on the premises and should be abated.

Insofar as the judgment of the trial court granted an injunction against Connie Busch personally, and awarded costs against her or against her real estate, it is reversed. Insofar as the judgment granted an injunction in rem against the real estate it is affirmed.