No. 35,013

THE STATE OF KANSAS, *Appellee,* v. F. E. FINK et al., *Defendants*
(J. H. WILLS, *Appellant*).

(110 P. 2d 738)

Opinion filed March 8, 1941.

*Charles C. Calkin,* of Kingman, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, and *Charles H. Stewart,* county attorney, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This is an action to abate and enjoin the maintenance of a nuisance under the intoxicating-liquor law. The sole appellant is the owner of the property in question. His contention is that there was no evidence under which a judgment *in personam* could lawfully be entered against him and made a lien upon the property.

On November 3, 1939, a petition was filed in Kingman county charging that the liquor laws were being violated and a common nuisance maintained in a certain property known as "Fink's café and filling station," located at Rago. Named as defendants were Fink, who operated the place, and Wills, the appellant, who owned the property and lived at Norwich, fourteen miles from Rago. Fink was charged with the actual operation and maintenance and Wills with knowingly permitting the property to be so unlawfully used. Accompanying the petition was a motion for a temporary injunction, which was granted the day the petition was filed.

Several years theretofore Wills had leased the place to one Wilson and his wife. For reasons not necessary to narrate, Wills had executed a new lease to Mrs. Wilson individually, the term running from June, 1939, to June, 1940. During the time here involved Mrs. Wilson was living at Wichita. While the lease did not provide for

subletting, Mrs. Wilson had sublet to Fink when she moved to Wichita, and this was with the knowledge of Wills. Wills' dealings, however, were entirely with Mrs. Wilson and he looked exclusively to her for rent and care of the property. She usually sent him by mail the check for the rent. Mrs. Wilson was not made a defendant in the action to abate the nuisance.

Following the filing of the action and the granting of the temporary injunction against Fink and Wills, there was apparently no complaint about the way the place was conducted by Fink until about six months later, in May, 1940, when two women, Melba Bockleman and Leona Rogers, were apparently placed in charge by Mrs. Fink, who had been operating the restaurant and desired to sell out. On May 29, 1940, the place was raided, intoxicating liquor found, Fink and the two women were arrested and contempt proceedings instituted against them. Wills was not made a defendant in the contempt proceedings. At a hearing on June 5, Fink and one of the women were adjudged in contempt. Following the contempt proceedings, trial was had in the original action. Fink had filed a general denial, but made no defense at the trial. Appellant had filed an answer denying all knowledge that the place was being unlawfully conducted and setting forth various matters by way of defense. At the conclusion of the state's evidence appellant demurred. The demurrer being overruled, defendant's evidence was heard. Judgment granting a permanent injunction was entered, material portions of the journal entry being as follows:

"3. That the above-described premises were on the 3d day of November, 1939, and for a number of months prior thereto, used by the defendant, F. E. Fink, as a common nuisance; contrary to the provisions of the intoxicating-liquor laws of the state of Kansas, and bore a reputation as being so used in the community in and surrounding Rago, Kan., and said premises continued to be so used and to bear such reputation in said community to and inclusive of May 29, 1940.

"4. That the defendant, J. H. Wills, lived at Norwich, Kan., fourteen miles from Rago, was in poor health, and of considerable means. During the period of perhaps a year prior hereto, Wills had been in Rago only once, and that to inspect and order a new floor put in the café building, which was some considerable time prior to the issuance of the temporary injunction herein. He stayed rather close about his own home, but after service of the temporary injunction he employed an attorney and learned that Fink had an internal revenue license for retailing intoxicating liquors, and his attorney notified Mrs. Wilson of the injunction proceedings, disclaiming any present intention of canceling the lease, demanded that she see 'that any improper use of said premises be ended at once.' That no other measures were taken by said defendant, Wills, to eject Mrs. Wilson, or the defendant, Fink, from said premises.

"5. That on the night of May 29, 1940, the sheriff raided said property and found some 25 people in the so-called dance hall, located between the café and the living quarters, and some eight or ten bottles containing intoxicating liquor in or about the booths in the dance hall. A number of the persons were under the influence of intoxicants. The property is located on state highway number 14, and on this and previous occasions traffic hazards were created by frequenters. A few weeks previous Mrs. Fink had left the community and two young women from Newton came down and were ostensibly operating the café as 'Fink's place.'

"6. That the temporary injunction heretofore issued should be sustained and a permanent and perpetual injunction should be granted.

"It is therefore considered, ordered, adjudged and decreed that a permanent and perpetual injunction be and is hereby granted against said property, hereinabove described, and the defendants and each of them . . . that the plaintiff have and recover of the defendants its costs in this action, now taxed at $231.25, that said costs are hereby declared to be a lien upon the real estate and appurtenances thereto as hereinabove described, and that unless said costs shall be paid within thirty days from this date, then that execution shall issue as against the property hereinabove described."

Motion to set aside certain findings and substitute others and the motion for a new trial need not here be noted in detail. There is no contention that the right of appellant to be heard on issues raised by the appeal was not adequately protected.

In the recent case of *State, ex rel., v. Dick,* 150 Kan. 230, 92 P. 2d 92, which in many respects is similar to this one, will be found (pp. 233, 234) a concise summary of the statutes dealing specifically with questions here involved and we need not repeat what is there said. The particular section with which we are here immediately concerned is G. S. 1935, 21-2137, which provides:

"Anyone who knowingly permits any building or tenement owned or leased by him or under his control, or any part thereof, to be used in maintaining a common nuisance, or, after being notified in writing of such use, omits to take all reasonable measures to eject therefrom the person so using the same, shall be deemed guilty of assisting in maintaining such nuisance."

It should first be made clear that no attack is made upon that part of the judgment which determined that a liquor nuisance had been maintained on the premises and which granted a permanent injunction as against the property. The proceeding was also in the nature of an action *in rem,* and there was ample evidence to support such a judgment. (See *State v. Lewis,* 63 Kan. 265, 65 Pac. 258.) It should also be noted that there is no appeal from the personal judgment for costs against defendant Fink, who was charged with

actual operation. The issue here is whether there was substantial evidence that appellant, owner of the building, either assisted in maintaining the nuisance, had actual knowledge of such unlawful use of the property, or was in possession of facts sufficient to put an ordinarily prudent person upon inquiry. In determining that question we must also examine the record to see just what appellant did following the service upon him in the original action.

It must first be said that there is no evidence that appellant had any knowledge, prior to the temporary injunction in November, 1939, that the law was being violated in his property at Rago. There was testimony that for some time the place had had a bad reputation in and around Rago as a place where intoxicating liquors were sold and where people were permitted to congregate for the purpose of drinking liquor. But there was no testimony that such reputation extended generally to Norwich where appellant lived, or that he had any knowledge whatever concerning such reputation. Appellee virtually concedes that if the judgment against appellant is to stand it must be supported by what took place subsequent to the filing of the petition to abate in November, 1939.

As found by the trial court, Wills, who was in poor health, had been in Rago only once during the preceding year and that was sometime before the issuance of the temporary injunction. Immediately after service of the temporary injunction he employed an attorney, who at once wrote to Mrs. Wilson, appellant's lessee, concerning the matter, calling attention to the statutes relating to the violation of the liquor laws by a tenant, stating that Wills had had no knowledge or any reason to suspect that such a violation of law was going on in his property at Rago. In this letter it was stated that Wills assumed that Mrs. Wilson likewise had had no such knowledge, desired to give her the benefit of the doubt and was not canceling the lease as he might do under the law, but was demanding that she, as lessee, see that any improper use of the property be ended at once. We have examined the record carefully and find no evidence that the appellant had any reason to suspect that any violations of the liquor laws took place in the property following the temporary injunction until the raid took place in May, six months later. The court found that the place bore the reputation in and around Rago of being a place where the liquor laws were violated and that the premises continued to be so used, and such reputation in the community continued "to and inclusive of May 29th, 1940."

The court did not find that the appellant had knowledge of such reputation, and we find no substantial evidence to support a finding of violations after the issuance of the temporary injunction until shortly before the raid in May. On May 31, two days after the raid, the county attorney filed his affidavit upon which the citation for contempt was issued against Fink and the two women. In this affidavit he said:

"4. Affiant further states that *for some time after the issuance of said temporary injunction the defendant, F. E. Fink, maintained the premises as ordered by the court, but that,* heretofore and on the —— day of May, 1940, the exact date being unknown to this affiant, the defendant, F. E. Fink, knowingly and intentionally and with the purpose of avoiding and defeating the temporary injunction aforesaid, did cause to come upon the premises hereinabove described, the said Melba Bockelman and Leona Rogers, as lessees, servants, agents or employees. That the said F. E. Fink, Melba Bockelman and Leona Rogers *since such date have maintained upon the premises hereinabove described a common nuisance* in the following particular, to wit:" (italics ours).

The evidence, later adduced, substantiated the county attorney's affidavit that the place appeared to be conducted lawfully until the two women came there in May upon arrangement with Mrs. Fink, when she decided to get out of the restaurant business. There was no evidence that the appellant was at Rago at any time during the period in question. L. J. Wilson, son of Mrs. Wilson, who seemed to be looking after matters for her, was a witness for the state and testified repeatedly that appellant had insisted that the place be properly conducted and that when he advised appellant, just before the women came, that Mrs. Fink was selling out, appellant said that he did not know these women, but that whoever went in there would have to run the place as it should be run. The sheriff, testifying for the state, testified that the place became quiet after the temporary injunction, and that complaints began again in May; that between the time the temporary injunction was issued and the raid in May he had looked in on the place several times; that he talked to Wills shortly after the temporary injunction, and Wills told him he wouldn't allow any liquor violations to go on there; that he never saw the appellant around Rago at any time; that he never reported anything about the place either to the appellant or his attorney. Various witnesses for the state, who were residents at Rago, testified that they had never seen the appellant in Rago.

Evidence on the part of appellant supplied no deficiencies in the state's evidence. Appellant testified, in substance, that he did not

know the two women who took charge of the restaurant from Mrs. Fink and had never seen them until the day of the trial; that the first time he had any knowledge or reason to suspect that the place was not conducted lawfully was when he was served with notice of the temporary injunction; that he thought he then took effective steps to see that the violations were stopped; that he talked to the county attorney, who told him Fink was being given a little time to dispose of his business and get out. He said that he didn't know until after the raid that the two women had actually taken over the business. He admitted he had not canceled Mrs. Wilson's lease or started court action to eject her subtenants.

Mr. Wunsch, attorney for Fink, testified that at the December term of court, following the temporary injunction in November, the case was formally continued, and at the March term was passed over; that all of this was after discussions with the county attorney and agreement that the case would be continued if Fink would pay the costs and would sell out, and that then the case would be dropped; and that it was understood that "it could remain without being closed up to give Fink an opportunity to sell out" so that he wouldn't have too much of a financial sacrifice. This testimony was not controverted.

It is urged by the appellee, however, that the judgment was properly entered against appellant because he did not cancel Mrs. Wilson's lease and take legal steps to eject her and her subtenants from the premises. Attention is called by appellee to the latter part of G. S. 1935, 21-2137, *supra*, which provides that an owner who fails to take all reasonable measures to eject from the premises the person who has maintained a common nuisance therein "after being notified in writing of such use" shall be deemed guilty of assisting in the maintenance of the nuisance. The petition, however, which stated the only charges which appellant was required to meet, was not based upon that part of the statute. He was charged solely under the first part of the section with knowingly permitting the unlawful use of the premises. Appellee argues, however, that the petition charged a continuing offense and that therefore any material facts subsequent to the filing of the petition could be shown. Assuming this to be true, it does not follow that subsequent facts not falling within the charges made against Wills would be admissible against him. In other words, the defendant was entitled to know what the specific charges were and to assume that he would be tried

only on the charges contained in the petition. He was not charged with failure to eject after written notice. If the state desired to enlarge the charges to include such an allegation, it should have asked to file a supplemental petition for that purpose as provided for in G. S. 1935, 60-764. It did not do so, nor was appellant made defendant in the contempt proceedings. However, even if we assume—solely for purposes of the argument—that a personal judgment could properly be entered against appellant on the ground that he had failed to eject after written notice, although such charge was not included in the petition, and if we further assume that the temporary injunction was equivalent to the "written notice" required by the statute, we still find the record insufficient to support the judgment. Considering all the facts hereinbefore enumerated, we do not think it could be said that he did not take "reasonable measures" as required by the statute to see that violations were stopped and that Fink or other persons guilty of such violations were ejected by Mrs. Wilson. Certainly there was no evidence whatever that he had any knowledge that the new subtenants, under whose operation the violations were resumed, had been guilty of such violations. It may be well to observe that appellant is entitled to have the evidence subjected to the same test of sufficiency that would be applied if this were any other sort of case not involving the intoxicating liquor laws.

As heretofore noted, the judgment against Fink and the injunction as against the property are not disturbed. Insofar as the judgment granted an injunction against appellant Wills personally and made such a judgment a lien against the property, it must be reversed. It is so ordered.