The State v.. Ross.

---

THE STATE OF KANSAS, *Appellee*, v. FRED ROSS *et al.* (ED WRIGHT, *Appellant*).

No. 17,906.

SYLLABUS BY THE COURT.

INTOXICATING LIQUORS — *Common Nuisance — Hotel—Privilege of Guest.* In this case it is held that a hotel porter who, for a guest of the hotel, received and stored in a room of the house a barrel of bottled beer belonging to the guest, and who afterwards, as required by the guest, iced the liquor and served it at the guest's room, where it was drunk by him and his friends, was guilty of maintaining a place where persons were permitted to resort for the purpose of drinking intoxicating liquor as a beverage, contrary to the provisions of section 1 of chapter 232 of the Laws of 1901.

Appeal from Shawnee district court, division No. 1. Opinion filed March 9, 1912. Affirmed.

*Z. T Hazen, R. H. Gaw, R. F. Hayden,* and *G. P. Hayden,* for the appellant.

*John S. Dawson,* attorney-general, and *Ernest R. Simon,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was charged with keeping a common nuisance in that he maintained and assisted in maintaining a described place where persons were permitted to resort for the purpose of drinking intoxicating liquors as a beverage. The defendant was a porter at a hotel—the place in question—in Topeka. A traveling salesman having business in Topeka for several days ordered a barrel of bottled beer to be sent there from Kansas City, Mo. His purpose was to drink the beer while at the hotel. He arrived in Topeka on March 9, registered at the hotel, and on the afternoon of the same day had the beer delivered at the hotel. The beer was received and stored in a room of the hotel by the porter, who put two dozen bottles on ice, locked the door of the room and gave the key to the owner of the beer. Afterward the porter took the key and brought some of the beer to the owner's room where he and a friend drank it. The same process of icing and serving the beer was repeated a number of times, until March 11, when the place was raided. Usually one friend and on one occasion three friends of the owner of the beer came to his room and participated in the drinking. The court summarized. the foregoing facts and instructed the jury that they were sufficient to constitute the place a common nuisance, and the defendant its keeper. The defendant was found guilty and appeals, claiming that the facts were not sufficient to warrant his conviction.

The statute reads as follows:

"All places . . . 'where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage . . . are hereby declared to be common nuisances; and every person who maintains or assists in maintaining such common nuisance shall be guilty of a misdemeanor." (Laws 1901, ch. 232, § 1, Gen. Stat. 1909, § 4387.)

The argument is made that the hotel was the temporary home of its guest, that the porter became his servant, that a man may personally do in his home what was done here, and that he may, if he desires, have a servant in his house to keep his cellar and sideboard and serve refreshments from them, all without offense.

This argument shifts the ground upon which the case must be determined. We are not concerned with what a man may lawfully do in his home. The traveling salesman was not at home but was lodging at a public hotel where his general rights and privileges were governed by the law of inns and innkeepers. The porter was not his domestic servant but was an employee of the hotel proprietor in the conduct and management of the hotel's business and affairs. Virtually the same argument was advanced in the Topeka Club case (*The State v. Topeka Club*, 82 Kan. 756, 109 Pac. 183), which was decided under a cognate statute, and with a greater appearance of plausibility because of the essentially private character of the club. But it was pointed out, in response, that the legislature intended to discriminate between private hospitality at one's home and indulgences elsewhere in order to prevent practices which might lead to evasions and infractions of the law. The legislature itself made the distinction in the very act under consideration by providing that the discovery of intoxicating liquor in the possession of one not authorized to sell it, except in a private dwelling house not connected with a place of business, is *prima facie* evidence that the possession is for an unlawful purpose. (Laws 1901, ch. 232, § 8, Gen. Stat. 1909, § 4396.)

Relieved of the false coloring taken on from the home analogy, and examined in their true light, the facts present this aspect: The traveling salesman was allowed to establish a barrel of intoxicating liquor in a hotel room, where it was kept in store and cooled

for his use from time to time, and then to repair to the hotel, and assemble his friends there, for the purpose of drinking such liquor as a beverage. The defendant, in his custody, control and management of the liquor, storing it, locking it up, unlocking it, cooling it and serving it, adapted the hotel to the uses and conducted it according to the purposes of the resorting drinkers. The hotel was thus converted into a place where persons were permitted to resort for the purpose of drinking intoxicating liquors as a beverage, the defendant maintained the place in that way, and to that end, and every element of the offense denounced by the statute appears.

It is said, however, that the court has decided, and rightly decided, that a man in the *bona fide* possession of intoxicating liquor may use it as he sees fit, drink it himself, give it away to his friends or dispose of it any other lawful way, without being guilty of any crime. (*The State v. Standish,* 37 Kan. 643, 16 Pac. 66.) That case was decided in 1887, under the club-room section of the act of 1881 (Laws 1881, ch. 128, § 16), which established the drug-store system of selling intoxicating liquors under a permit. It was held that Standish had not violated the section referred to by permitting persons to place kegs of beer in a back room of his store and then come there and drink it. The legislature has traveled very far since that statute was enacted and that case was decided, and a person would make a great mistake to rest conduct upon the liquor law as it then stood. The schemes and shifts and devices to evade the law have been so numerous and cunning, and the social benefits hoped for from regulation of the liquor traffic have been so presistently circumvented, that the legislature has felt it necessary again and again to call upon the people to make personal forbearances in the interest of what has been esteemed the general welfare. Finally, in 1909 (Laws 1909, ch. 165,

The State v. Ross.

§§ 1-3, Gen. Stat. 1909, §§ 4400-4402), public drinking on passenger trains and on street-railway and interurban cars was forbidden and the manufacture and sale of intoxicating liquors was prohibited altogether within the state, even for medicinal purposes. Previous to the adoption of these measures numerous other acts trenching on individual liberty had been passed, and among them was the one under consideration. The court understands the legislative intention to have been, in part, to forestall the consequences flowing from the abuse of intoxicating liquors by curtailing freedom to use them, and to that end to suppress places where persons are permitted merely to resort for the purpose of drinking such beverages. Consequently it must be held that the jury were properly instructed and that the verdict was duly warranted. Much more meager facts were held sufficient to sustain a conviction under the same statute in the case of *The State v. White,* 83 Kan. 416, 111 Pac. 437.

A minor contention regarding the sufficiency of the information is decided adversely to the defendant.

The judgment of the district court is affirmed.

PORTER, J. (concurring specially) :   I concur in the result but not in all that is said in the opinion.