No. 18,859.

THE STATE OF KANSAS, *Appellant*, v. H. POGGMEYER
(THE GERMAN AMERICAN ALLIANCE, Interpleader,
*Appellee*).

SYLLABUS BY THE COURT.

COMMON NUISANCE—*Liquors, Glasses, etc., Seized—Their De-
struction Ordered.* Upon a review of the findings of the
district court it is held that intoxicating liquor, glasses, etc.,
seized by the sheriff upon a warrant charging the defendant
with maintaining a common nuisance, should be destroyed,
as provided in section 4392 of the General Statutes of 1909,
requiring the destruction of such property used in maintain-
ing a common nuisance.

Appeal from Leavenworth district court; JAMES H.
WENDORFF, judge. Opinion filed February 7, 1914.
Reversed.

*John S. Dawson*, attorney-general, for the appellant;
*W. P. Montgomery*, and *James P. Coleman*, both of
Topeka, of counsel.

*Floyd E. Harper*, of Leavenworth, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an appeal from an order direct-
ing that a quantity of beer and twenty-five beer glasses,
a beer pump and faucet, seized upon a warrant against
the defendant, Poggmeyer, should be delivered to the
interpleader, The German American Alliance. The
material facts found by the district court may be thus
stated. The property in question was seized by the
sheriff in a hotel in Leavenworth operated by the de-
fendant. He had leased a room in the hotel, together
with the beer glasses, to the alliance for one dollar for
each meeting. At the time of the seizure the alliance
was holding a meeting in this room, where the glasses,
pump, and a half barrel of beer on tap were found.
Another unopened half barrel was found in the adjacent

yard. The beer had been delivered the same evening.
Meetings of the members of the alliance had been held
every two weeks for the preceding thirteen months.
Beer and sandwiches had been provided and served at
four of these meetings, including the one then in prog-
ress, "for the entertainment and regalement of mem-
bers present." The avowed purposes of the alliance,
which is incorporated under an act of congress, are
patriotic, social and literary. The usual program at
the meetings consisted of recitations, addresses, sing-
ing, etc. The liquor seized was purchased by the alli-
ance in Missouri for use as a beverage at its meetings.
Funds were derived from dues of members and volun-
tary contributions made at the meetings to pay the
expenses, including the cost of beer. The alliance has
branches in other states. The Leavenworth organiza-
tion has about 2000 members and from 50 to 150 attend
the meetings. The defendant held an internal revenue
stamp as a retail liquor dealer at the premises in
question, and he was present when the liquor was
seized.

The statute provides that where intoxicating liquor,
glasses, pumps and the like are seized a notice shall be
issued to the defendant in the case, and all persons
claiming an interest in the liquors and property, and
if upon the hearing it shall be found:

"That said intoxicating liquors or other property, or
any part thereof, were at the time the complaint or in-
formation was filed being used in maintaining a com-
mon nuisance, he shall adjudge forfeited so much
thereof as he shall find was being so used, and shall
order the officer in whose custody it is to publicly
destroy the same; so much of said intoxicating liquor
or other property as the court shall not find to have
been used in maintaining a common nuisance he shall
order returned by the officer in whose custody it is to
the place, as nearly as may be, from which it was taken,
or delivered to the person establishing his claim to the
same." (Gen. Stat. 1909, § 4392.)

The question for decision is whether upon the facts found the property seized was used in maintaining a common nuisance, which is thus defined:

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of the law, and all intoxicating liquors, bottles, glasses, kegs, pumps, bars and other property kept in and used in maintaining such a place, are hereby declared to be common nuisances." (Gen. Stat. 1909, § 4387.)

It will be observed that under this section places are declared common nuisances, (a) in which intoxicating liquor is sold or given away in violation of law; (b) where persons are permitted to resort for the purpose of drinking such liquors as a beverage; and (c) where such liquors are kept for sale, barter or delivery in violation of law.

Another section declares that:

"Every person who shall, directly or indirectly, keep or maintain, by himself or by associating or combining with others, or who shall in any manner aid, assist or abet in keeping or maintaining any club-room or other place in which any intoxicating liquor is received or kept for the purpose of use, gift, barter or sale as a beverage, or for distribution or division among the members of any club or association by any means whatever, and every person who shall use, barter, sell or give away, or assist or abet another in bartering, selling or giving away any intoxicating liquors so received or kept, shall be deemed guilty of a misdemeanor." (Gen. Stat. 1909, § 4371.)

The various provisions of the prohibitory law, containing amendments and changes made in the twenty-five years and more of its growth, should be construed together as if all its provisions were enacted at the same time. (The State v. Jepson, 76 Kan. 644, 648, 92 Pac. 600.)

In *The State v. Topeka Club*, 82 Kan. 756, 109 Pac. 183, it appeared that members of a club which had been organized to furnish social enjoyment were permitted to keep their own intoxicating liquors in lockers in the clubhouse. A member desiring liquor would give the key of his locker to a club waiter, who served the liquor. It was said in the opinion:

"It seems clear that the purpose of the locker system, and its only purpose, is to enable members of the club to have intoxicating liquors where they can be readily obtained for consumption as a beverage by themselves and their invited guests. It does not seem unreasonable, therefore, to say that the Topeka club keeps and maintains a place where intoxicating liquors are received and kept for *use as a beverage*. This clearly violates the law." (p. 760.)

In a case where it appeared that a traveling salesman had been allowed to establish a barrel of intoxicating liquor in a hotel where it was kept in store and cooled for his use, and to which he repaired from time to time with his friends for the purpose of drinking the liquor as a beverage, it was held that the place was a common nuisance within the provisions of section 4387 of the statute quoted above. After referring to the progress of legislation on this subject to meet shifts and schemes to evade the law, and the fact that the legislature had traveled very far since the statute was first enacted, it was said in the opinion:

"The court understands the legislative intention to have been, in part, to forestall the consequences flowing from the abuse of intoxicating liquors by curtailing freedom to use them, and to that end to suppress places where persons are permitted merely to resort for the purpose of drinking such beverages." (*The State v. Ross*, 86 Kan. 799, 803, 121 Pac. 908.)

In *The State v. White*, 83 Kan. 416, 111 Pac. 437, a conviction for maintaining a nuisance under the section last referred to was affirmed. The defendant had placed a case of beer in a haymow, where he was found

eating crackers and drinking beer with another person. He admitted drinking there with his friends, to whom he gave the beer, but did not sell it.

It is insisted by the appellee that the statutory phrase "permitted to resort" implies frequency of occurrence. Whether permitting persons to come into the place on one occasion only for the purpose of drinking would be sufficient to sustain the charge need not be decided since the findings show that at four meetings of the alliance intoxicating liquors had been provided and used as a beverage. The Ross and White cases, without citing others, are precedents well sustaining the conclusion that there was a sufficient repetition of meetings for the prohibited purpose, if such repetition is necessary to make out the offense. It may be observed, in passing, that if one occasion, or two or three, are not enough to bring the place within the condemnation of the statute, offending parties may easily evade its provisions by a frequent change of location. Especially is this true where rented rooms are used. One definition of the word "resort" when used as a verb, given in Webster's New International Dictionary, is "To go; to repair; to betake one's self; esp., to go or repair frequently, customarily, or usually."

Decisions cited of prosecutions against keepers of saloons and disorderly houses under similar statutes holding that the element of frequency must be shown, but as already stated, if necessary, which we do not decide, it sufficiently appears in this case.

An argument is also presented based upon the innocent and laudable nature of the general purposes of the club or alliance, in connection with which it is said drinking is only incidental. This argument was considered in *Commonwealth v. Fleckner,* 167 Mass. 13, 44 N. E. 1053, a prosecution against a Turn Verein, organized for athletic exercises and literary pursuits, maintaining a school and gymnasiums and supported

by dues and proceeds of entertainments. Free liquor was served at its meetings. The court said:

"It is not necessary to prove that the place is used mainly for that purpose, (Dispensing intoxicating liquor to its members or others,) citing *Commonwealth v. Burke,* 114 Mass. 261." (p. 15.)

In *Commonwealth v. Baker,* 152 Mass. 337, 25 N. E. 718, the statute referred to is quoted as follows:

"All buildings or places used by clubs for the purpose of selling, distributing or dispensing intoxicating liquors to their members or others shall be deemed common nuisances." (p. 338.)

In the opinion it was said:

"A place would be equally a nuisance under the statute if used by a club either to sell intoxicating liquor to its members, or to distribute among its members intoxicating liquor owned by them in common, or to procure for and dispense to its members intoxicating liquor which was bought for and belonged to them individually." (p. 339.)

These decisions are in harmony with the Topeka Club case. It should not be overlooked that in *City of Iola v. Lederer,* 86 Kan. 347, 120 Pac. 354, referred to as the case of the keg party, the prosecution was for making an unlawful sale, and not for maintaining a nuisance.

In view of the persistent progress in legislation on this subject, evincing a consistent and increasing purpose to make the law effective, and the repeated decisions of this court construing and upholding this legislation, it must be held that the place in question falls under the condemnation of the statute, and that the liquor and articles seized with it should be destroyed as the statute directs.

The judgment is reversed with directions for further proceedings in accordance with these views.