### UNITED STATES ex rel. DOBRA v. LINDSEY, Immigration Inspector.

#### No. 1449.

District Court, S. D. Texas, at Houston. July 9, 1931.

Harold M. Oster, of Galveston, Tex., for relator.

H. M. Holden, U. S. Atty., and M. S. McCorquodale, Asst. U. S. Atty., both of Houston, Tex., for respondent.

**142**

HUTCHESON, Circuit Judge.

Relator, under a warrant of deportation which finds that "he has been found managing a house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather," filed his application for a writ of habeas corpus, asserting that there was no ground for the finding and that therefore he was being unlawfully detained.

The proof establishes that the alien has lived in the United States and in Galveston, Tex., for more than fifteen years, during which time he has never been arrested nor charged with an offense; that he is by occupation a longshoreman and that he has also from time to time been engaged, by himself and with others, in running small businesses, such as a restaurant and cigar and soft drink stand at 2701 Post Office street, the place where the charge is laid. That this number is in the section of Galveston occupied largely, if not mainly, by places of prostitution, but also in part by business houses which carrying legitimate goods, supply the trade to dwellers in and frequenters of the district and others.

There is some conflict in the evidence as to whether relator sold intoxicating liquor and ran a gambling house at the place. There is sufficient evidence, however, to sustain the conclusion of the department that for at least a part of the time in question relator did conduct there, in addition to the restaurant, a soft drink, cigar, and cigarette business and a place for gambling, and did in the soft drink stand conduct an illicit trade in liquors.

It is respondent's claim that this primary finding, that relator did in such a district run a gambling house and sell illicit liquors, coupled with the testimony of the three negro women who admitted themselves to be prostitutes and with criminal records, and the testimony of the alien himself that plenty of women of the neighborhood came in to buy cigarettes, support the ultimate conclusion on which the warrant rests, that the relator "has been found managing a place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather."

Respondent declares that the place over which relator presided was the gathering ground for the three social disgraces, gambling, illicit liquor, and lewd women, and that not only within the spirit but within the letter of the law, his place was that character of resort and place of amusement to which the statute refers.

No case has been cited which has either construed or applied this section of the statute to facts like those at bar. It is, however, perfectly plain that the mere fact that prostitutes frequent a place of business for the purpose of carrying on there trade in legitimate articles of commerce does not condemn the place, nor bring under the law those who conduct it, for both in fact and in law "ladies must live" and the words of the statute have been chosen with care to make this clear.

That which is denounced is "a house of prostitution, or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather," and it is clear that to bring a place under the law's condemnation there must be conducted there a business itself sub-rosa like the business of prostitution upon which it feeds and thrives. The incidental or casual coming of prostitutes therefore, even to a gambling or illicit drink place, is not within the mischief of the statute (8 USCA § 155); it is the characteristic, the habitual, the recurring use of such place by prostitutes as a place of gathering or resort, "a place of frequent assembly, a haunt." In re Sic, 73 Cal. 142, 14 P. 405, 410; Webster's International Dictionary.

If then the evidence establishes that the place was maintained as a place where prostitutes met men for the purpose of gambling and drinking liquor with them, and that it was maintained there to provide an opportunity for such a concourse, the fact that the proprietor of the place had no direct connection with or interest in the professional activities of his women customers would not save him from the prohibition of the statute. On the other hand, if the evidence establishes no more than that the relator maintained a gambling place for men and in connection with his soft drink and cigar and cigarette stand did sell illicit liquors to persons who might come in to buy, the mere fact that some prostitutes incidentally came there and incidentally along with patronizing the restaurant, buying cigarettes and soft drinks there, did at times buy illicit liquor, and further that incidentally from time to time some woman of that class would come into the gambling house "to get her man out," this would not make a case under the statute; for this would not show that the place in question was run

and maintained as a hangout or haunt for the purpose of gathering and harboring prostitutes and catering to and thriving upon their business.

Considering the evidence in the case in the light of this controlling principle, I think it plain that no case has been made out; for while there is evidence on the part of one of the women, Fannie Hart, that she went in there on Saturday nights to get drinks, on the part of another, Winnie Stayton, that she had bought liquor in there and had been in there pretty often at night to get "my old man who was in there gambling," and had seen a great many women of her class in there, and of Rosa Harris, that she had been in there two or three times, giving the fullest effect to this testimony, and disregarding the wholly unreliable character of the witnesses, it amounts to no more than that in a place consisting of a restaurant, soft drink stand, and gambling house some of the women of the district from time to time entered and from time to time were served in the soft drink part of the establishment with illicit drinks. None of it supports the finding that they congregated in or resorted to the gambling house at all, or that the drinking place was in any manner a haunt for them.

But this is not all; looking to the whole testimony, that of Hamilton, the prohibition agent, that he had never found enough liquor in the place to justify prosecution; that he had never seen a woman in the place in his life, though he had been there several times; of Daniels, the police officer, that he had seen women go into the restaurant but that he had not seen any women in the bootlegging joint; that there was a pretty large stock of cigars and cigarettes there, and that the women of the district were very seldom seen there, they sent their maids to buy; the testimony of the alien that plenty of women came in to buy cigarettes; the entire absence of testimony that the place was used or resorted to by women for soliciting or plying their trade—the only conclusion which the evidence permits is that the place was not a haunt or hangout for prostitutes, but that their coming there was an incident, rather than a characteristic, of the business managed by the alien, and that within the meaning of the statute a case of deportation against the alien is not made out.

It appearing that the detention of the relator is unlawful, it is ordered that he stand discharged.