## Minnichbach License

*Sidney L. Krawitz* and *Charles R. Bensinger*, for appellants.

*Clement J. Reap*, Special Assistant to the Attorney General, for appellee.

DAVIS, P. J., April 7, 1961.—This matter is before the court on appeal of Joseph J. Minnichbach and Mary C. Minnichbach, his wife, from refusal by the Pennsylvania Liquor Control Board, hereinafter referred to as "the Board," to grant their application for a restaurant liquor license. . . .

### Discussion

The board as the basis of its refusal to grant these appellants a restaurant liquor license found as a fact that "There is no evidence of actual necessity for an additional restaurant liquor license in Greene Township, Pike County." If the term "actual necessity" were

given a strict interpretation we doubt that facts could ever be shown that would require the issuance of a liquor license. However, we will not quibble about terms, but will give the expression a broad construction and interpret it to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility. We note in appeal of Elkview Country Club, 56 Lack. Jur. 32, 35, Judge Hoban adopts a standard of "reasonable necessity." We would not quarrel with that interpretation.

The Liquor Code defines restaurant as follows:

" 'Restaurant' shall mean a reputable place operated by responsible persons of good reputation and habitually and *principally* used for the purpose of providing food for the public, . . .": Liquor Code of April 12, 1951, P. L. 90, 47 PS §1— 102. (Italics supplied.)

We believe it was the intention of the framers of the act, and in particular of the Governor, a resident of Pike County, who approved it, that the public should have the privilege under a restaurant liquor license of consuming its liquor in premises principally used for the purpose of providing food for the public, and under circumstances and conditions appropriate for the service of food alone.

The licensee across the highway from appellants, and a comparatively short distance away, operates his restaurant and bar in one room and closes on Sunday because it would be too difficult to remove the liquor from the room. Another licensee a mile and a tenth from applicants separates his bar from his restaurant by a partition and serves his food on formica-covered tables. Our questioning did not disclose a single establishment where tablecloths were used in connection with the service of food. We do not mean to indicate that we think it is necessary to use tablecloths in order to have a restaurant habitually and principally used

for the purpose of providing food for the public, but it is quite usual in restaurants catering to a family trade.

Robert Bianckini, a witness for appellants, and a frequent visitor to the Promised Land Area, testified in part as follows:

"A. It (Minnichbach) is the only public dining room in the area.

"Q. Are you familiar with the other licensees in the area?

"A. Yes.

"Q. What is the difference between those facilities and the ones of Mr. and Mrs. Minnichbach, the applicants here?

"A. Well, the others is a bar room. A lot of times you don't like to take your family into a bar room. I have no family myself. But occasionally you have friends or something that would like to go in and have a meal and also a drink."

The only protestants are the Pike-Wayne Tavern Association and certain individual members thereof. The association has adopted the policy of opposing the granting of all additional licenses regardless of the circumstances and conditions.

The Promised Land State Park area consists of about 1,500 acres with a 422-acre lake. The park activities center around the lake. At the park there are 316 tent and trailer sites, 12 family cabins and approximately 231 permanent camp sites on the land in the immediate area. In addition to the users of the tent, trailer and permanent camp sites, thousands of other persons, mostly in family groups, come to the area to enjoy the recreational facilities. It is undisputed that there has been a steady growth and development around this lake and in this area for a number of years. Mr. Gumble placed it at 10 percent per year. The number of restaurant liquor licenses in the township has not been increased for several years.

752

Applicants meet all of the conditions required of a licensee. Their restaurant has been established and used for a number of years as a place where only food was served to the public. In the light of the testimony presented to this court (we have no knowledge as to the testimony presented before the board) we believe a reasonable necessity requires that this license be granted and we further believe that a substantial need in relation to the enjoyment of the facilities of the community by the public will be met in so doing. . . .

*Order*

And now, April 7, 1961, the action of the Pennsylvania Liquor Control Board in refusing a restaurant liquor license to appellants, Joseph J. Minnichbach and Mary C. Minnichbach, his wife, is reversed. The Pennsylvania Liquor Control Board is directed to issue a restaurant liquor license to said Joseph J. Minnichbach and Mary C. Minnichbach, his wife, conditioned that the said applicants comply with the appropriate provisions of law with respect to the granting of licenses.