**Bendl Application**

*Malos, Baurkot & Baratta,* for applicant.

*Thomas F. Kilroe,* for Pennsylvania Liquor Control Board.

MARSH, J., July 28, 1972.—This matter is an appeal from an order of the Pennsylvania Liquor Control Board dated February 14, 1972, wherein an application for a new restaurant liquor license and amusement permit applied for by William F. Bendl for premises in Pocono Township, Monroe County, Pa., was refused.

On August 16, 1971, William F. Bendl filed with the board an application on a prior approval basis for a new restaurant liquor license and amusement permit. After proper notices, a hearing was held before Michael Eagen, a hearing examiner representing the Pennsylvania Liquor Control Board. Based on this hearing, the order hereinbefore referred to of February 14, 1972, was made.

An appeal was perfected to this court and a hearing held in that matter on April 7, 1972. Counsel for applicant and counsel for the board agreed that the testimony taken before the hearing examiner would be submitted into evidence, as though the same had been before the court. Additional witnesses on behalf of the applicant were also heard at the time of the hearing before the court. It is stipulated and agreed that the population for the Township of Pocono is 1,870 people; that the license quota was one; that there were eight restaurant liquor licenses in force counted against the quota as of the time of the application; and that there were 10 licenses in effect in the municipality not counted against the quota. The Pennsylvania Liquor Control Board, through their counsel, is hereinafter referred to as the board. The application of William F. Bendl is under the trade name of Baggy Pants, Camelback Road, Box 276, Pocono Township, Tannersville, Monroe County, Pa. The building proposed to be used for the licensed premises is a converted barn which most recently has been used as a ski rental shop. The

board has found that if the barn renovations would be completed as planned, the physical requirements of the board would be met. They further agree that the applicant bears a good reputation and has no arrest record. He has submitted an affidavit that he would immediately resign from his present employment so that he could give full time to the operations of the licensed premises. There are no licensed establishments within 200 feet, nor any restrictive institutions within 300 feet of the proposed location. No protests have been filed in opposition to the application.

The board also agrees that the Pocono Township area is a resort area. There is a conflict in the testimony as to the distance from the proposed licensed premises to the area known as Camelback, which is a large ski area located, according to the applicant, one and three-quarter miles from the premises, and according to the Liquor Control Board three and eight-tenths miles from the premises.

It is stipulated that all personal and physical requirements are met by the applicant and the premises to be licensed, if they are completed in accordance with the specifications submitted.

The sole question before the court is whether or not the board abused its discretion in not granting a license under the Act of April 12, 1951, P. L. 90, art. IV, sec. 461(b), as amended, 47 PS §4-461(b), which language is as follows:

"The board shall have the power to increase the number of licenses in any such municipality which in the opinion of the board is located within a resort area."

Since the board agrees that Pocono Township, Monroe County, Pa., is a resort area within the contemplation of the act, the question narrows further down to whether or not the board abused its discretion when

it made its findings that, "There is no evidence whatsoever of any necessity for any additional restaurant liquor licenses in Pocono Township, Monroe County."

On an appeal from the Pennsylvania Liquor Control Board, the overall question which must be determined by the court is whether or not the board abused its discretion. While the record at the hearing before the court is de novo, it may be used only to determine the abuse of discretion. It may not be used for the court to substitute the court's discretion for the board's: Bierman Liquor License Case, 188 Pa. Superior Ct. 200 (1958). The same case also indicates that the Liquor Code basically was enacted to regulate and restrain the sale of liquor and not for the purpose of promoting it. To reverse, there must be a clear abuse of discretion by the board.

In Andes Grove Rod and Gun Club Liquor License Case, 201 Pa. Superior Ct. 21 (1963), the court indicated that it must be found that during certain times of the year the number of licenses in existence are not enough to adequately serve the needs of people.

In Willowbrook Country Club, Inc. Liquor License Case, 198 Pa. Superior Ct. 242 (1962), it was stated as follows:

"However, as we pointed out in the William Penn Sportsmen's Association and Mannitto Haven cases, the requirement of necessity in a resort area must be considered in the light of the circumstances under which the applicant operates. 'The term "actual necessity" in determining the need for a liquor license will be given a broad construction so as to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility.' "*

---

*The language used is attributed to that of Davis, P. J., in Minnichbach License, 24 Pa. D. & C. 2d 749, being our Forty-third Judicial District.

The Pennsylvania Supreme Court quoted the language of Judge Davis with approval in Willowbrook Country Club, Inc. Liquor License Case, 409 Pa. 370 (1962): "There is no doubt that to warrant the granting of an additional license in a 'resort area,' it must be clear that there is an actual need, and that the license holders already in business are not adequately equipped to supply the need of those frequenting the area."

The vast majority of the cases cited by counsel, as well as those which our research has developed, involved the application of an existing club, with substantial memberships in resort areas, and which have been in existence and were then applying for a club liquor license. The basis of the necessity was that of the necessity of the members to whom the club catered. See Nottingham Country Club Liquor Case, 44 Wash. Co. 35 (1963); William Penn Sportsmen's Association Liquor License Case, 196 Pa. Superior Ct. 519; Elkview Country Club, 56 Lack. Jur. 32; Aqua Club Liquor License Case, 202 Pa. Superior Ct. 192; Mannitto Haven Liquor License Case, 196 Pa. Superior Ct. 524; Riegelsville Legion Home Liquor License Case, 86 D. & C. 309.

In contrast to the club liquor license line of cases, we find the Osko License, 78 D. & C. 332 (1951). The facts show that the restaurant had been in existence for five years. We note that the court also stated: "We are thoroughly familiar with the conditions at Harveys Lake and we regret that the board does not see fit to make a thorough, comprehensive investigation to determine the need for licensed establishments there."

In Minnichbach License, 24 D. & C. 2d 749 (1961), the court found that the board had abused its discretion in not granting a license to an established restaurant which had been serving food for a "number of years." There were only two other licensees in the

area, one of which closed on Sundays, and the other which had the bar and the dining area separated only by a divider.

In Bairs, Inc. Liquor License Case, 14 Bucks 372 (1965), the applicant was a holder of a malt and brewed beverage license since 1951 and had been in the restaurant business all during that time. The similar stockholders of the corporate appellant had been in the same business and with the same license since 1934. Their restaurant was a "pub" and their application was for that of a liquor license. It is noted, too, in the Bairs case that the board, while finding there was no necessity in the Bairs case during the time that the Bairs case was under appeal, had granted a new license in the same area, thereby admitting that they erred in the existence of a necessity. It is also to be noted that in the Bairs case, competitors of Bairs, Inc., appeared on behalf of appellant and testified as to the necessity, thereby admitting that they, as an existing licensee, could not handle the public's needs.

It is apparent that the case before the court here differs from the existing line of cases in that the applicant has not made any showing of any extensive restaurant business in existence at the time of his application for a liquor license.

Turning to a look at the evidence presented to the court, there was testimony by an assistant ski instructor at Camelback indicating that there would on occasions be 1,500 to 2,500 people on a weekend at the Camelback Ski Area. Cross-examination of the investigator for the Pennsylvania Liquor Control Board stated that they could seat between 200 and 400 in their cafeteria. The only testimony as to inadequacy of the seating capacity as being able to cope with the number of persons wanting to eat at one time was that on the

weekend previous to his testimony there was a line approximately 30 yards long. This single occasion testimony does not set forth to the court the concept necessary for necessity. This would be true even if the court would believe that an assistant ski instructor would be in a position to give testimony warranting merit as to the adequacy or inadequacy of the food and drink area of the Camelback Ski Area. The testimony as to the time that the cafeteria closed was at best nebulous in that the witness stated that the cafeteria closed about 4:30, "I think." The testimony as to food and drink available at the Train Coach Restaurant in the area was not a clear setting forth of evidence in that the witness said that it was "to the best of my knowledge." There was some testimony that there were 49 developments "in the area" with no definition of what he meant by what was "in the area."

Testimony from an official of the Corps of Engineers indicated that they estimated, based on information from the Park Service, that there would be 846,000 people in the Tocks Island Area, of which some portion would have been there anyway, and that this was double the figure of last year. He failed to testify as to the relevancy of these figures in Pocono Township. It is to be remembered that the Tocks Island Area covers three States and at least five counties.

The court finds that the testimony presented by the applicant was at best nebulous; for the most part would have been objectionable as hearsay; but even admitted without objection, does not clearly set forth facts which would require a court to declare that the Pennsylvania Liquor Control Board abused its discretion. The testimony presented seeks to compare the licensees in Pocono Township against the number of people in areas varying from township, county, Pocono

Mountain Area (could cover as much as six counties) and Tocks Island Park Area (could cover five to nine counties spread over a three-State area).

Even though the court may feel that the Pennsylvania Liquor Control Board did not do its homework in that it failed to produce adequate studies of the influx and increases of people in the area, from the testimony presented before the court, the court could not, as a matter of law, say that the Pennsylvania Liquor Control Board abused its discretion. We, therefore, enter the following

## ORDER

And now, July 28, 1972, the order entered on February 14, 1972, by the Pennsylvania Liquor Control Board wherein it denied the application for a new restaurant liquor license and amusement permit applied for by William F. Bendl for premises in Pocono Township, Monroe County, Pa., known as Baggy Pants, is affirmed.