**Wolf Run Marina, Inc., Liquor License**

*R. T. Mutzabaugh,* for appellant.

WOLFE, P. J., August 23, 1973.—This is an appeal of the applicant, Wolf Run Marina, Inc., from the decision of the Pennsylvania Liquor Control Board denying its application for a retail dispenser eating place license for premises owned and operated by appellant on Route 59 in Mead Township, Warren County.

The denial was made for the reason the township's quota was filled and applicant had failed to show the premises proposed to be licensed are in a resort area as claimed, and there was no evidence of actual necessity for an additional license for the retail sale of malt brewed beverages.

The 1970 census for Mead Township was 1,787 persons and presently in effect are four restaurant liquor licenses counted against the township's quota of one on this population, and two hotel liquor licenses which are not counted against the legal quota.

It is appellant's position that the facility which it desires to license is a "floating restaurant" on the Kinzua Dam which is located in a resort area and that there is a necessity for an additional license to accommodate the general public using the Wolf Run Marina and the surrounding dam area.

As recognized in Willowbrook Country Club, Inc. Liquor License Case, 409 Pa. 370 (1962), the term "resort area" has not been defined by the statute: Act of April 12, 1951, P. L. 90, as amended, 47 PS §4-461(b). The court, in reflecting upon the history of the enactment of this statute by the legislature found that

it was its intent to "render an equitable distribution of such licenses in areas where, during certain seasons, the population is increased to such an extent that the usual number of licenses *is not adequate to serve the needs of the people*." (Italics in original.) The court also could find no reasonable distinction between a "recreational area" and a "resort area." We think, from the court's holding, that the distinction has become so deteriorated and redundant, there is no practical difference.

Willowbrook further held that in order to justify the granting of an additional license in a "resort area." there must be sufficient evidence that there is a natural need and that the established license holders in the area cannot fulfill the need.

" '[T]he requirement of necessity in a resort area must be considered in the light of the circumstances under which the applicant operates. "The term 'actual necessity' in determining the need for a liquor license will be given a broad construction so as to mean *substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility.'* " Accord, William Penn Sportsmen's Association Liquor License Case, 196 Pa. Superior Ct. 519, 175 A. 2d 908 (1961); Mannitto Haven Liquor License Case, 196 Pa. Superior Ct. 524, 175 A. 2d 911 (1961); Minnichbach License (Pike County), 24 Pa. D. & C. 2d 749 (1961); and Elkview Country Club, supra": Willowbrook, supra, at pages 374-75.

In Wildwood Golf Club Liquor License Case, 199 Pa. Superior Ct. 353 (1962), in considering a club license application in a resort area with a seasonal influx of over 2,000,000 people, with no overnight accommodations for the visitors or guests, but accommodations made for overnight camping facilities used annually by some 6,000 persons, the court found the

licensing statute does not limit the type of licenses to be issued in a resort area, thereby concluding that a club license could be issued in resort areas, and refused to draw a distinction between a private club license and an application for a general public restaurant license as in the instant case.

In Aqua Club Liquor License Case, 202 Pa. Superior Ct. 192 (1963), the board, in refusing to issue a club license to the applicant, recognized the premises were in a resort area but concluded there was no evidence of necessity for another license for the retail sale of alcholic beverages in the township, noting that a club license would be limited to the club's membership. On appeal, the board was reversed and the reversal affirmed by the appellate court because the record indicated the club is near Lake Erie, Presque Island Bay and Presque Isle Peninsula, there was boating, fishing and swimming and during the winter months the bay was used for ice boating, skating and fishing through the ice, and the club members needed an accommodation and meeting place to "congregate in informal attire such as bathing suits and skin diving suits" which would not be permitted in a more formal licensed establishment.

Again, the court, following Willowbrook Country Club, Inc. Liquor License Case, supra, stated the term "actual necessity" must be given a broad construction so as to mean substantial need in relation to the "pleasure, convenience and general welfare of the persons who would make use of the facility." The court concluded the evidence indicated the services requested could not be furnished by the existing licensed establishment.

In the instant case, applicant's floating restaurant is anchored 100 yards offshore. There are no overnight

accommodations within a three-mile radius and many people come in great numbers to fish, camp and boat. The Kinzua Reservoir upon which the restaurant is located consists of 80,000 acres. A United States Forest Service study indicates the Wolf Run Marina is close to the central portion identified in the reservoir as a possible resort area or recreational potential. The Kinzua Dam water area accommodates 31 facilities for boat launching, picnicking, swimming, hiking, cabin camps, picnic areas, golf courses, observation areas, bank fishing, boat sales, storage and rentals, boat launching and beach areas. The reservoir also accommodates winter sports such as snowmobiling and hunting. Additional summer sports include viewing scenery, bicycling and horseback riding. In 1971 there were 772,600 visitor days' use of the immediate dam area and in 1972 there were 618,800 visitor days' dam use, the decline being attributed to hurricane Agnes which closed some of the facilities. A one-visitor day constitutes a 12-hour use. The study shows there were in excess of 2,000,000 visitor days to the Allegheny National Forest area, as distinguished from the Allegheny Reservoir area, in 1970, and there is a projected use of the entire forest area in 1975 in excess of 3,000,000 visitor day use.

The applicant's facility is accessible to all of the 31 facilities adjacent to the water except the overlook areas and the golf courses. There is no other access to the facility except by boat and the public using these areas and facilities are required to bring their own food and beverages.

During the months of May, June and July 1973, more that 93,000 persons used the access road to the applicant's marina, all coming for gasoline, ice, food and boat launching. Applicant's facility is the only

accommodation for these services in Pennsylvania by those using the Kinzua waters. The nearest licensed facility by public highway is a five-mile circular trip from the applicant's facility. Applicant's marina accommodates about 300 boats, which include cruisers and houseboats upon which people have overnight accommodations. The other licensed establishments are a circular trip by public highway a distance ranging from 12 miles to 21 miles.

When we consider the use made of the Allegheny Reservoir Dam area by the general public and the outdoor nature of that use and the distance the public must travel on the highway to reach any licensed establishment and that applicant's restaurant is the only restaurant on the water area that is accessible by boat, we must conclude that the applicant's marina and restaurant is located in a resort area and, as the cases hold, "actual necessity" must be given a broad construction to meet the need of the public seeking pleasure and convenience in making use of the facilities, and in concluding that the existing licensed establishments do not meet the public demands. We therefore, find that there is a necessity in the instant case and make the following

## ORDER

And now, August 23, 1973, the order of the Pennsylvania Liquor Control Board dated June 6, 1973, denying the appellant's application for a new retail dispenser eating place license is reversed and the board is ordered to approve the application provided applicant meets all the other requirements of the Liquor Code.