**In Re: Application for New Restaurant Liquor License Caracciolo t/d/b/a Pirates Cove**

*Walter A. Criste,* for P.L.C.B.
*David J. Tulowitzki,* for protestants.
*Robert D. Gleason,* for petitioners.

O'KICKI, *J.*, April 16, 1982—The case at bar is an appeal from a decision of the Pennsylvania Liquor Control Board denying a restaurant liquor license to petitioners, Richard A. and Marianne Caracciolo. That P.L.C.B. decision was appealed and two lengthy de novo hearings were held. The parties have supplied this court with briefs and supplemental briefs.

Petitioners operate a bona fide restaurant at R. D. 1, Beach Road, Patton, Pa. in Clearfield Township, Cambria County, called the "Pirates Cove." The quota for restaurant liquor licenses in Clearfield Township is one; however, two already have been issued in that township. Therefore, the board refused petitioners' application for issuance of a new restaurant liquor license.

These issues are presented by the facts:

1. Are the proposed premises (i.e. Pirates Cove) located in a 'resort area," thus qualifying it for the issuance of a new license under the "resort exception" to the quota system of the Liquor Code?

2. Is there such necessity in the affected area in which Pirates Cove is located to justify the issuance of an additional restaurant liquor license?

3. Is the testimony of protestants, Patrick and Diane M. Ott (proprietors of the "Anchor Inn") inadmissible since their business is located more than 500 feet from petitioners' business?

The board, by their refusal to issue the restaurant liquor license, found all three issues in protestants' favor.

This court from its de novo record makes the following

## FINDINGS OF FACT

1. Pirates Cove is located in a "resort area."

2. There is a necessity in this area in which Pirates Cove is located for its general proposed services attendant to a restaurant liquor license.

3. Protestants have standing in this proceeding and their testimony is admissible.

4. Daniel K. Park, an organizer of the Cambria County Tourist Council in 1961, and its president for 16 years, testified without contradiction or rebuttal that:

a. The Prince Gallitzin area is a resort area that is promoted by State and local tourist agencies. 10).

b. More than 900,000 persons visited the Prince Gallitzin Park in 1980.

c. The Cambria County Tourist Council advertised the Prince Gallitzin Park in 42 newspapers in 1980.

5. Regina Winslow, Office Manager of Area Realty and Development Company, Patton, Pa., (six miles from Prince Gallitzin Park) and former justice of the peace for 30 years, testified without contradiction or rebuttal that:

a. She has been actively engaged in the rental of housing accomodations for visitors to Prince Gallitzin Park since the park was opened in 1961.

b. She has been active in the Patton Chamber of Commerce and its industrial committee and participated in a convention with the National Campers Convention that resulted in 35,000 campers coming to Prince Gallitzin Park.

c. She has been a leader in business efforts to secure funds from the Department of Community Affairs and the Department of Environmental Resources for the advancement of tourism at Prince Gallitzin Park.

d. Prince Gallitzin Park is a resort area.

e. There is an acute need for another liquor license facility in Clearfield Township.

## OPINION

The classification of an area as a "resort" entails many factors other than a definition. The mere fact that a neighborhood provides opportunities for fishing, boating, and swimming doesn't, of itself, make the area a "resort area," Appeal of Andes, 201 Pa. Super. 61, 190 A. 2d 355, (1963). Granted, these are typical activities of a resort area. However, these activities must be present in areas where a large *transient* population engage in them. In Re: Aiello, 41 Pa. Commw. 345, 399 A. 2d 154, (1979) defined the term "resort area" (there is no statutory definition evident in the Code) by holding that "the term connotes a territory experiencing a seasonal increase in population as a result of the visitation of transients, Aiello, supra, at 155. It required a "specific finding as to influx of transients. It is not sufficient to find that the number of people in the area increases during a certain season. What is required is a specific finding . . . "that there was an increase of _____ persons yearly in the region at peak periods." There is ample evidence in the record concerning the nature of the area in question which leads this court to make such a specific finding.

Pirates Cove, as well as Anchor Inn, is squarely in the area of a recognized "resort area"—Prince Gallitzin State Park/Glendale Lake, which has over 16 miles of shoreline. There is a significant number of visitors in the area. The heavy influx of these tourists is established by the exhibits and testimony. Particularly significant is the fact that the statistics for the year 1980 indicate that 955,783 visitors attended the park alone, and an additional 141,529 campers were stationed within the park.

Furthermore, the resort nature of the site is shown on the December 12, 1980 letter of the Cambria County Tourist Council offered in evidence. This letter designates the area as a "resort with much more growth material" and was authored by individuals whom the court feels are qualified and credible in their assessment. The purpose of the Tourist Council, which was established by the County Commissioners, is to encourage the development of the area, i.e. investments by public, semi-public, and private individuals and organizations. This development potential, coupled with the fact that a significant portion of the township area is devoted to summer park purposes dictates that the area clearly falls within the definition of the "resort area." Case of Beckar Liquor License, 19 Bucks 131, (1969); In Re: Appeal of Brandywine Valley Inn, Inc., 417 A. 2d, 823 (1980)

Protestants urge us to classify the area in question as a "playground" rather than a "resort." They also contend that since alcoholic beverages are specifically prohibited within the confines of Prince Gallitzin State Park, the grant of an additional liquor license would be contrary to public policy to promote a family atmosphere in the park. We cannot follow that view outside of the park area where the proposed license is located.

Neither petitioners' nor protestants' establishments are within the park itself. In fact, the Anchor Inn (protestants' establishment) is the closer of the two to the park entrance. Further, although petitioner testified frankly as to his desire to provide alcoholic beverages in his business, the primary function of Pirates Cove is to be that of a "full service" restaurant rather than a primary supplier of alcoholic beverages. Although the court could follow protestants' classification of the area, we cannot hand down a decision

for a purpose such as theirs, i.e. "to make over and mold the people of the Commonwealth into a model society," no matter how well-intentioned that decision may be. There is no evidence that Pirates Cove would be detrimental to the area. Therefore, to classify the area as a family playground contrary to the weight of the evidence, usurps the power of the legislature and will of society. We must base our decision within the limits of the authority granted to us by statute. See, Appeal of Maxie Club, 50 Lack. Jur. 249, (1949). The court there held that it was an abuse of court power to refuse a license on public health and moral grounds unless the refusal was based on evidence presented. If such a refusal was allowed, the court would therefore usurp the power of the legislature to legislate on such matters.

Thus, in view of the evidence indicating the purpose and function of Prince Gallitzin Park, we must forego the protestants' characterization of the area and find that Pirates Cove is situated in a "resort area."

Turning now to the question of necessity, we recognize the principle that static population and normal trade of an area are usually the guidelines to determine the need for an additional license once the area quota is filled. However, where the area is designated a resort, necessity must be considered "in the light of the circumstances under which the business operates." In Re: William Penn Sportman's Association, 96 Pa. Super. 519, 175 A. 2d 908, 910 (1961).

The circumstances and surrounding area under which Pirates Cove operates leads this court to find a need for a full service restaurant supplying a broad menu and the need to supplement such restaurant with a liquor license. There is an influx of an exhorbitant number of tourists and visitors to the area as evidenced previously. Pirates Cove is located

on the West end of the lake near Anchor Inn. It was testified to that there are two other "eating facilities" located around the perimeter of the lake, one on the East side, four to five miles distant and one on the Northeast side, six miles distant. These two facilities, however, as the court gathered, do not provide services such as a full dinner menu. Although Anchor Inn has the capacity to provide food services equal to the Pirates Cove, it does not do so. Their food operation, however, does meet the 40 percent food requirement of a Sunday Sales Permit, petitioners, on the other hand, have remodeled a business designed three years ago to sell only sandwiches and ice cream into a 1,200 square foot business serving full dinners, at a cost of $60,000.

An examination of applicable case law defines "necessity" in relation to the pleasure, convenience, and general welfare of the persons using it, including such factors as size, location of the resort area, number of persons, existing facilities and size of investment. In Re: Nottingham Country Club, 44 Washington 35, (1965), Willowbrook Country Club, Inc., 409 Pa. 370, 187 A. 2d 154 (1962).

It is patently obvious that petitioners' business meets the quoted factors needed to find "actual necessity" for Pirates Cove, i.e. it is a full scale restaurant and located in an area in which there is a great influx of tourists every season. However, even when giving the need here, a "broad construction" as to "actual necessity." Janis v. Pennsylvania Liquor Control Board, _____ Pa. Commw. _____, 402 A. 2d 1093, (1979) we must recognize the necessity for another liquor license in this resort even though the township is already one over quota. This is especially so when the court must examine "existing facilites" as a factor to consider in determining necessity, Nottingham, supra.

Petitioners, in their brief, cite numerous cases as being analogous to their situation. (Appeal of Younger, 66 D. & C. 2d, 784 (1974), Appeal of Gustino, 56 D. & C. 2d, 350, (1972), as well as License of Wesray, Inc., 53 D. & C. 2d, 292 (1971) involving a state park). As before, these cited authorities indicate a need in each instant case. Anchor Inn, holding one of the granted licenses in the township, is serving some of the liquor needs of the resort area. Pirates Cove has demonstrated to us that the Liquor Control Board's finding concerning necessity is invalid. The P.L.C.B. did not have the benefit of the expert testimony of Mr. Park and Mrs. Winslow. The area is indeed in dire need of a family style, full menu restaurant, including another liquor license in the township.

Petitioners alleged in their original brief that protestants' testimony, given at both hearings (P.L.C.B. and Trial Court) is inadmissible since Anchor Inn is located over 900 feet from Pirates Cove's property line. They contend that protestants have no standing to testify unless they own a business that is within 200 feet of the disputed place or if they live within a radius of 500 feet of the place proposed to be licensed if such license would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood: 47 P.S. §4-404.

Indeed, protestants do not come under either of these sections their property being 900 feet away. This court believes, however, that the operative term in a determination of the standing to challenge the license issue here is the phrase "inhabitants of the neighborhood." The Code is concerned with the inhabitants' welfare within 500 feet of the proposed facility. As such, this court is led to a distinction between a neighborhood and a resort area as judi-

cially determined, supra. Accordingly, we turn from the statutory standard and turn to the common law standard of standing to sue. The party must have a direct interest in the subject matter, an immediate and pecuniary interest and not a remote consequence in the possible outcome. The interest must be substantial: United Virginia Bank, 44 D. & C. 2d 99, (1968). The effect of our decision on protestants' business is patently evident. Their interest in the outcome of the suit meets the above criteria.

Accordingly, we find that protestant's testimony is admissible and is part of the record of the case at bar.

Finally, we turn to the determinative issue of the case. Did the Pennsylvania Liquor Control Board abuse its discretion in its decision to refuse petitioners a restaurant liquor license when the Liquor Code provides for a maximum of one in the township—there being two granted already?

It is well settled that the granting of a liquor license is merely a privilege and not a right of the petitioner: Appeal of Cardamone, 63 Lackawanna 49, (1963), Procopio v. Staskiel, 21 Northumberland 199, (1950), Appeal of Saudey, 83 A. 2d 713, 169 Pa. Superior Ct. 214, (1951) reversed on other grounds, 85 A. 2d 28, 369 Pa. 19, (   ). Therefore, in circumstances such as these, where there is compliance with the Code in the issuance of the single liquor license, the court can substitute its discretion for that of the Liquor Control Board *only* if there is a *clear abuse* of its power in denying such: Appeal of Amminiti, 32 Pa. Commw. 13, 377 A. 2d 1042, (1977). (Emphasis ours.)

In finding the facts of this case substantially in accordance with the Pennsylvania Liquor Control Board's findings, we must conclude that there was

an abuse of discretion on their part, primarily because the record was incomplete. The court has the power to set aside or modify the LCB decision if we find facts that are different than those that the Board found: Pa. Liquor Control Board v. Brock's Cafe, Inc., 39 Pa. Commw. 597, 366 A. 2d 74, (1979).

Therefore, we reverse the board's refusal to issue a restaurant liquor license to petitioners.

## ORDER

And now, April 16, 1982, after consideration of the de novo testimony taken on December 30, 1981, December 15, 1980, and the PLCB record in the above-captioned matter, it is this court's findings that:

1. The premises proposed to licensee are located in a "resort area."

2. Petitioners did establish through the testimony of Mr. Daniel Park of the Cambria County Tourist Council and Mrs. Regina Winslow of the Patton Chamber of Commerce that large numbers of visitors utilize the park facilities at the nearby Prince Gallitzin State Park and that there is a need for an additional restaurant liquor license in Clearfield Township, Cambria County, Pa.

Wherefore, the appeal of petitioners is sustained. The Pennsylvania Liquor Control Board shall issue to petitioners a new restaurant liquor license, provided that petitioners are otherwise qualified to receive the same.